(Decided 8th June, 1876.)

---

JOHN A. HAMBLETON and THOMAS E. HAMBLETON, trading as JOHN A. HAMBLETON & Co. *vs.* THE CENTRAL OHIO RAILROAD COMPANY, AS RE-ORGANIZED.

*Question as to which of two Innocent parties shall bear a Loss occasioned by a Forgery—Estoppel.*

H. & Co., in good faith, advanced money upon C. O. R. R. Co. stock, pledged to them under forged powers of transfer. The railroad company upon the receipt of the original certificates of stock in like good faith cancelled them, and issued new ones in the name of H. & Co. HELD:

1st. That as between H. & Co., and the railroad company, (the rights of third parties not being involved,) the loss must fall upon the former.

2nd. That the fact of the stock issued to H. & Co. having been subsequently sold by them to third parties, did not affect the case, it appearing that the sale was made by H. & Co. with knowledge of the forgery.

3rd. That the payment of the dividends on the stock to H. & Co., by the agents of the R. R. Co. after the company was informed of the forgery, had no significance, and could not estop the company, it appearing that they were not paid by the direction of the company, but through the mistake or inadvertence of the agent, in overlooking or failing to observe the directions given by the officers of the company that "*they were in litigation, and were not to be paid till ordered by the Court.*"

4th. That the issuing of the certificates to H. & Co. by the R. R. Co., upon the faith of the forged powers of attorney sent them by H. & Co., did not create an estoppel against the company.

Declarations to create an estoppel, must be made by a party whose duty it is to *know* and state the truth, and must be relied on by one who has no other means of information, or is justified in relying upon such declarations.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed against both the appellants and appellees, to obtain relief under the following state of facts: Isaac M. Denson and John D. Quincy were partners in business, under the name of Denson & Quincy. Denson, individually, was the owner of one hundred shares of the stock of the Central Ohio Railroad Company, as re-organized, for which he held three certificates. Quincy got possession of the certificates, and without the authority or knowledge of Denson, forged the signature of the latter to powers of transfer endorsed upon them. The certificates were then delivered to John A. Hambleton & Co., bankers in the City of Baltimore, as collateral security for a loan which they made upon the faith of that security. Hambleton & Co. sent the certificates to the office of the Central Ohio Railroad Company and procured in lieu of them two new certificates in their own name, the original certificates being cancelled. The loan upon the stock was made by Hambleton & Co., without knowing that the signatures of Denson to the powers of transfer were not genuine, and the railroad company acted in equal ignorance of the forgery, in cancelling the old certificates and substituting for them the new certificates issued to Hambleton & Co. Hambleton & Co. sold the substituted certificates so received by them, to Whitridge and Cohen, but the Central Ohio Railroad Company, being by that time informed of the forgery, refused to transfer the stock to the vendees. Denson & Quincy having assigned their partnership and individual property to Robert Fowler, in trust for the benefit of their creditors, this bill was filed by the trustee against Hambleton & Co. and the Central Ohio Railroad Company, praying that the

latter be compelled to issue new certificates in the name of Isaac M. Denson, for the use of the complainant, in lieu of the cancelled certificates, and that the certificates issued to Hambleton & Co. be cancelled and annulled.

The answer filed by the Central Ohio Railroad Company was also in the nature of a cross-bill, praying as follows: "But if the Court should be of opinion that the complainant is entitled to new certificates of stock in lieu of those cancelled by the Company, then it prays the Court to pass an order cancelling and annulling the two certificates of its stock for one hundred shares each, numbered 1689 and 1690, issued to the said Hambleton & Co., and this defendant asks its costs in that case against said Hambleton & Co."

The case having been heard upon the bill, answers and testimony, the Court below (PINKNEY, J.,) passed the following decree:

" It is thereupon ordered and decreed by the Court, this 9th day of June, 1875, that the Central Ohio Railroad Company as re-organized, on or before the 30th day of June, 1875, issue and deliver to the complainant three certificates of its stock, each to set forth that Isaac M. Denson is the holder thereof, first for fifty shares, and to bear date September 3rd, 1869 ; the second for 50 shares and to bear date October 23rd, 1869, and the third for 100 shares, and to bear date October 5th, 1869 ; and that it pay to the complainant within the time above mentioned, the 12th, 13th and 14th dividends on said 200 shares of stock, to wit, the sum of nine hundred dollars, and such other dividends, if any, as have accrued and are due and payable ; and further that said Company pay the complainant his costs.

" It is further ordered and decreed, that John A. Hambleton and Thomas E. Hambleton, co-partners, trading as John A. Hambleton & Co., pay to the Central Ohio Railroad Company as re-organized, on or before the 30th day of June, 1875, the sum of six hundred dollars, being the

12th and 13th dividends on said stock, paid in error by said Company to the said John A. Hambleton & Co., that the two certificates of stock of the Central Ohio Railroad Company numbered 1689 and 1690, each for 100 shares, issued on the 20th day of August, 1873, to John A. Hambleton & Co., be, and the same are hereby cancelled ; and further, that the said Hambletons pay to the said Company as re-organized, its costs.''

From this decree the defendants, Hambleton & Co., appealed, as against the Central Ohio Railroad Company only.

The cause was argued before Bartol, C. J., Brent, Miller and Alvey, J.

*J. Douglas Hambleton*, for the appellants.

Certificates of shares of stock like those in question, approach as near as may be to negotiable instruments. *Leitch vs. Wells*, 48 *N. Y.*, 613 ; *Bridgeport Bank*, 30 *Conn.*, 275 ; *Bank vs. Lanier*, 11 *Wall.*, 377.

The time of transfer is at the option of the holder (assignee) of these certificates ; but when transferred, the transfer secures to him several essential legal and valuable rights, flowing from the corporation as distinguished from his preceding equities merely. *Dodd's Appeal*, 2 *Hem. & Mill.*, 424 ; *Rich vs. Boyce*, 39 *Md.*, 314 and 327 ; 44 *Indiana*, 5.

The forger (Quincy) in this case being solvent and accessible during the period the substitute certificates issued to Hambleton & Co. were in their hands, was amenable to *arrest*, and other legal steps for his forgery, which would, in all probability, have secured the money of Hambleton & Co.

The proximate cause of losing these remedies against the forger, was the issue to them of the substitute certificates by the R. R. Co.; and the loss of these remedies is alone

sufficient to hold the R. R. Co. responsible to Hambleton & Co., although Hambleton & Co. advanced their money before getting these certificates. *Central N. Bank vs. N. Bank of the Commonwealth*, 50 *N. Y.*, 575, and numerous cases therein cited; *Com. & Far. N. Bank vs. First N. Bank*, 30 *Md.*, 28.

And this is so, irrespective of the advantages Hambleton & Co. might or might not have derived from proceeding against Quincy. *Knight vs. Wiffin*, 5 *Q. B.*, 665. (Same case in *Benjamin on Sales, Perkins' Ed.*, 675, and cited in 50 *N. Y., supra*.)

Wing inserted his name as attorney in fact, and acted as such when under no obligation so to do, so far as Hambleton & Co. were concerned; and when he had the right on behalf of the R. R. Co., to withhold a transfer to Hambleton & Co. till satisfied of the regularity of the powers submitted to him, and could have required Denson's personal attendance. *Chew vs. Bank of Balto.*, 14 *Md.*, 319 and 320.

The *value* of its stock depends upon the security of the title thereto; and it is clearly to the advantage of corporations in the long run that the *bona fide* holder of a certificate have every assurance that he is what the certificate solemnly recites him to be, its absolute owner. *Sabin vs. Bank of Woodstock*, 21 *Vert.*, 360.

These substitute certificates bore the seal and the several *genuine* official signatures of the several officials empowered by the R. R. Co. to issue certificates. These several signatures and *checks* are for the protection of the *public*, as well as the Company. *Tome vs. Parkersburgh R. R. Co.*, 39 *Md.*, 107.

It is the law of Maryland, that a holder of stock must demand his dividends at the place of payment. It would be mischievous and unjust, if a corporation which has acquiesced in this demand by payment, should be at liberty, at any time within the Statute of Limitations, to rip

up the matter and recover back the money.   *Lester vs. M. & C. C.*, 29 *Md.*, 419.

The attitude of "stakeholder," which the R. R. Co. elected to take in November, 1873, in this controversy, and maintained by it till November, 1874, was but a "bold experiment" at best.   *Dalton vs. Midland R. R. Co.*, 74 *Eng. C. L.*, 458.

The Railroad Co. allowed the forger to complete in its office in Columbus, Ohio, the fraud he had set on foot in Baltimore.   It *facilitated the negotiation* in the public markets, and to the detriment of innocent takers, of *an assignment forged on a document or obligation of its own issue. Woodruff & Robinson vs. Munroe*, 33 *Md.*, 147.

By issuing the stock it is estopped.   *Bayard's Case*, 52 *Penna.*, 235.    The Railroad Co. attorned to Hambleton & Co.   *Benj. on Sales*, 677 ; 26 *Vermont*, 373.

The decree of the Court below should be made to conform to these views, and reversed so far as it ignores and denies the rights of Hambleton & Co., as against their co-respondent; and the stock or *damages*, should be restored or awarded to them.   *Pollock vs. National Bank*, 3 *Seld.*, 375 ; *Ashby vs. Blackwell*, 2 *Eden*, 299 ; *Tome's Case*, 39 *Md.*, 107.

The recitals on the face of the certificates issued to Hambleton & Co., *fully justified them in changing their position, by entering into the contracts with Cohen and Whitridge,* and assuming the liability they did in so contracting.   The following Maryland and English authorities throw much light on these several questions.   *Cohen vs. Gwynn*, 4 *Md. Ch. Dec.*, 357 ; *Hodges vs. Planters' Bank*, 7 *G. & J.*, 306 ; *In Re Bahia and San Francisco Railway Co.*, 3 *Q. B.*, 584 ; *Hunter vs. Westminster Improvement Commissioners*, 14 *Eng. L. & Eq.*, 379 ; *Taney's Decisions*, 310 ; *Ang. & Ames on Corporations*, secs. 583–5.

*E. J. D. Cross* and *John K. Cowen*, for the appellee.

This Court in the opinion delivered in the case of *Brown, Lancaster & Co. vs. The Howard Fire Insurance Company,*

and *Fowler, &c.*, 42 *Md.*, 384, passed upon a case precisely similar to this. The Court there held that the loss must fall on Brown, Lancaster & Co.

When the Central Ohio R. R. Co. was notified of the forgery, it was its duty to retain possession of the re-issued certificates, until the question of ownership was determined between the claimants, Denson and Hambleton & Co. It was a stakeholder, and as such could not deliver to either until the rights were established. This it sought to have done in as speedy a way as possible. When these two facts are conceded—the forgery of Denson's name, and that the advances of Hambleton & Co. were made before the stock was transferred—there is an end of their claim against the Company. Denson's title never having been divested, they cannot hold the stock they obtained under the forgery, they cannot retain any payment made them on account of the dividends, for the simple reason that they never owned the stock, or had any interest in it, and they cannot be permitted to retain what never belonged to them. *Canal Bank vs. Bank of Albany*, 1 *Hill*, 287 ; *Lowry vs. Com. & Far. Bank, Taney's C. C. Rep.*, 310 ; *Swan vs. North British Australasian Co.*, 7 *H. & N.*, 603 ; *Weaver vs. Barden*, 49 *N. Y.*, 286 ; *Hildyard vs. South Sea Co.*, 2 *Peere Williams*, 76 ; *Bank of Commerce vs. Union Bank*, 3 *Comstock*, 230 ; *Ellis & Morton vs. Ohio Life Ins. and Trust Co.*, 4 *Ohio State*, 668 ; *Nat. Bank of Commerce vs. Nat. Mechanics' Bank*, 55 *N. Y.*, 211 ; *Dinsmore vs. Duncan*, 57 *N. Y.*, 573 ; *Colson vs. Arnot*, 57 *N. Y.*, 253.

The appellants having been recognized as stockholders by the transfer to their name of the stock in question, acquired no rights from that mere recognition, as all their rights depend on their title to the stock.

The sale to Whitridge & Cohen was of two hundred shares ; the delivery of any shares would have been a compliance with the terms of the contract.

Hambleton & Company were *negligent* in taking the stock with the forged signatures, and they lent their money on their own judgment.

They were *not misled by the Company*, or their relation to the stock *changed* or *affected* by the action of the Company, as their dealings with it were prior to that action.

BARTOL, C. J., delivered the opinion of the Court.

It being conceded that the stock belonging to Denson, had been transferred without his knowledge or consent, by means of the forgery of his name upon the powers of attorney, it is clear that his title was not divested thereby, and therefore the decree of the Circuit Court was right in so far as it required the Railroad Co. to issue and deliver to the complainant new certificates of stock of the same dates and amounts as those held by Denson, and to pay over the dividends which had accrued thereon. *Hildyard vs. South Sea Co., et al.*, 2 *Peere Wms.*, 76; *Brown, Lancaster & Co. vs. Howard F. Ins. Co.*, 42 *Md.*, 384.

From that part of the decree no appeal has been taken.

The only question we have to decide is whether the loss resulting from the forgery, should be borne by the appellants or by the Railroad Company. Each of these parties are alike innocent, the former loaned their money upon the pledge of the stock, in good faith, believing the signature of Denson to be genuine; and the latter, in like good faith, upon receiving the original certificates from the appellants, cancelled them and issued new ones in the name of the appellants.

The question appears to be identical with that which arose between *Brown, Lancaster & Co.* and *The Howard Fire Insurance Co.* reported in 42 *Md.*, 384.

In that case certain stock of the *Fire Ins. Co.* belonging to Denson, had been pledged, by one Magruder, to Brown, Lancaster & Co. as collateral security for a loan, by means of powers of attorney purporting to be executed

by Denson, but upon which his name had been forged, by the same person who committed the forgeries in the present case.

The original certificates being returned by Brown, Lancaster & Co. to the Ins. Co. were cancelled, and new ones in lieu thereof were issued to Brown, Lancaster & Co. The forgery being afterwards discovered, it was decreed that Denson's assignee was entitled to have the stock restored to him, and as between Brown, Lancaster & Co. and the Ins. Co. it was held, that the former, having received the transfer of the stock, upon forged powers of attorney, were not entitled to hold the same as against the company not having given any consideration therefor, and the transfer having been made, through a mutual mistake of facts. And it was further held that the loss must be borne by Brown, Lancaster & Co. the same being the result of their own error, in advancing their money upon forged and fraudulent powers of attorney, and not having been caused by any negligence on the part of the company.

That decision, unless it is to be overruled, and we have seen no reason to doubt its correctness, is conclusive of the present case. We discover nothing in the facts and circumstances of this case, as disclosed by the record, which distinguishes it in principle from the other. In each of them, the question arises between the original parties,— between the corporation and the parties who took the certificates in the first instance, upon the faith of the forged powers of attorney. The rights of third persons are not involved, claiming as *bona fide* purchasers from the appellants upon the faith of the stock having been subsequently transferred to them, and being registered in the names of the company. "That," as was said in Brown, Lancaster & Co's case, "would present a different question." The sales made by the appellants to Whitridge and Cohen, do not affect the rights of the parties, because it appears by the proof in the cause, that they were made after the appellants

were notified of the forgery. This notice was given on the 28th day of August 1873, and the sales were made on the 29th and 30th of the same month. There is some conflict in the testimony on this subject, Mr. John A. Hambleton, states that he had no knowledge or notice of the forgery at the time of the sales; but he must be in error in this; for it is conclusively proved by the testimony of William A. Boyd that he was told of the forgery on the 28th day of August, and this testimony is confirmed by that of David Fowler, and Isaac M. Denson; and by the fact that the telegram to Wing, the secretary of the Railroad Co. which was sent to him after the interview of these witnesses with Mr. Hambleton, was received on the 29th at $8\frac{1}{2}$ *A. M.* It is evident from the account of the interview, given by the witnesses that Mr. Hambleton, paid but little attention to what they said to him, considering that they had no right to intrude upon him with reference to the transaction, and in this way we may account for his omission to notice their statements, and his failure to recollect them. That the notice was given on the 28th we think is satisfactorily established by the proof.

The payment of the dividends on the stock, to the appellants after the Railroad Company was informed of the forgery, has no significance, and cannot estop the Company, they were not paid by the direction of the Company, but as the testimony shows, through the mistake or inadvertence of the officer of the Baltimore and Ohio Railroad Company, charged with the duty of paying the dividends, in overlooking or failing to observe the directions given by the officers of the Central Ohio R. R. Co.—that "*they were in litigation and were not to be paid till ordered by the Court.*"

It has been argued by the appellants' counsel, that the conduct of the appellee in transferring the stock, cancelling the original certificates and issuing others to the appellants on the 20th day of August, operated to lull

them into false security and prevent them from seeking their remedies, by causing the arrest of the forger, and "that the loss of these remedies is sufficient to render the railroad company responsible to them, although they advanced their money before getting the certificates."

In support of this position we have been referred to *Knights vs. Wiffin*, 5 *Q. B.*, (*L. R.*,) 660, and *The Continental N'l Bank vs. The N'l Bank of the Commonwealth*, 50 *N. Y.*, 575.

A brief reference to those cases, will show that they have no application to this.

In *Knights vs. Wiffin* the facts of the case and the decision are thus stated in the brevier note: "The defendant having a quantity of barley in sacks, lying in his granary which adjoined a railway station, sold eighty quarters of it to M. No particular sacks were appropriated to M., but the barley remained at the granary subject to his orders; M. sold sixty quarters of it to the plaintiff who paid him for them, and received from him a delivery order addressed to the station master, as was usual in such cases. The plaintiff sent this order in a letter to the station master saying, 'Please confirm this transfer.' The station master showed the delivery order to the defendant, who said 'All right, when you get the forwarding note, I will put the barley on the line.' M. became bankrupt; and the defendant as unpaid vendor refused to deliver the barley when the forwarding note was presented to him by the station master, acting for the plaintiff. It was held that the defendant was estopped by his statement to the station master, from denying that the property in the goods had passed to the plaintiff; for by making such statement he induced the plaintiff to rest satisfied under the belief that the property had passed, and so to alter his position, by abstaining from demanding back the money which he had paid to M."

· The decision in 50 *N.* *Y.*, 575, rests upon the same ground. It was there held that "it is not necessary that a party should act affirmatively upon a. declaration to claim an estoppel. If he has acted not in reliance upon it, but has means in his power to retrieve his position, and relying upon the statement, and in consequence of it, he refrains from using these means, his claim will be upheld."

We are not disposed to question the soundness of this rule; but in each of these cases the declarations, which created the estoppel, were made by a party whose duty it was to *know* and state the truth, and were relied on by one, who had no other means of information, or was justified in relying upon such declarations.

Now the conduct of the Railroad Company which is relied on by the appellants, as creating an estoppel against the Company, consists in the issuing of the certificates to the appellants upon the faith of the forged powers of attorney, sent them by the appellants. The Company was not exclusively charged with the duty of ascertaining whether the signature of Denson was genuine, nor had the appellants any right to rely upon the conduct or declarations of the Company, in that respect. It was equally their duty to ascertain the genuineness of the signature, they had the same or greater facilities for inquiring into that matter, and having advanced their money upon the faith of the original certificates, without any inquiry with respect to the genuineness of Denson's signature; or any act or declaration of the Company to mislead them, they cannot claim that the Company is estopped by its subsequent conduct in accepting as genuine, the powers of attorney transmitted to them by the appellants, and transferring the stock at their instance.

The case is one of great hardship; for the loss must fall inevitably upon innocent parties; it has resulted from the error or inadvertence of the appellants, and there is no

rule or principle of equity which entitles them to cast it upon the Railroad Co. since it was not directly occasioned by any negligence on its part.

The decree of the Circuit Court must be affirmed and the cause remanded.

*Decree affirmed, and*
*cause remanded.*

(Decided 8th June, 1876.)