## BOSTON AND ALBANY RAILROAD COMPANY *vs.* SPENCER W. RICHARDSON & others.

Suffolk.    March 8, 9. — Sept. 10, 1883.    DEVENS & W. ALLEN, JJ., absent.

A corporation may maintain an action against a person who presents a forged power of attorney to transfer stock, upon the faith of which the corporation issues to such person a new certificate of stock, although such person acted in good faith.

In an action by a corporation against a person to whom it has issued a new certificate of stock, upon the faith of a forged power of attorney to transfer stock presented by him, the measure of damages will embrace: (1.) The costs and expenses (not including counsel fees) of a suit brought against the corporation by the person whose name was forged, to compel an issue of new stock to replace that transferred, the corporation having notified the present defendant of that suit and requested him to defend it, which he refused to do; (2.) The amount paid by the corporation for stock bought by it in good faith to replace that so transferred, although the stock was then of a higher value in the market than at the time when the forgery was committed; (3.) The dividends upon the stock which the corporation was obliged to pay the person whose name was forged.

MORTON, C. J.    This case, which is an action of contract with a count in tort, presents an important question, referred

to, but not decided, in *Machinists' National Bank* v. *Field*, 126 Mass. 345.

In January, 1876, Mrs. Pratt owned five shares of the stock of the Boston and Albany Railroad Company, and held a certificate running in her name. Her son forged her name to a blank power of attorney, printed upon the back of the certificate, and delivered it to one Field, a broker. Field sold the shares to the defendants, and delivered to them the certificate with the forged signature thereon. The defendants presented it to the transfer clerk of the plaintiff by Brown, their clerk, who filled up the blanks so as to make it a power of attorney to Brown to transfer the shares to Richardson, Hill and Company, the defendants. Throughout, Brown was acting as the agent and on behalf of the defendants. Thereupon the transfer clerk permitted Brown to transfer the shares upon the books of the corporation, and issued a new certificate to the defendants. Subsequently, and before the discovery of the forgery, the defendants sold the stock to a third person, and, at their request, the corporation issued a new certificate to the purchaser.

Upon these facts, it is clear that Mrs. Pratt never parted with her property in the shares, and therefore the plaintiff was obliged to procure five shares of its corporate stock, and issue a certificate to her, and also to pay her the dividends upon the five shares. *Pratt* v. *Taunton Copper Co.* 123 Mass. 110, and cases cited. It is also settled that the corporation has no remedy against the person who purchased of the defendants, because, as to him, the corporation is estopped to deny its certificate issued to the defendants and transferred to the purchaser. *Machinists' National Bank* v. *Field*, *ubi supra*, and cases cited. The question in this case is whether it has a remedy against the person who presented a forged transfer or power of attorney, upon the faith of which it issued to such person a new certificate.

This question has never been directly decided in this Commonwealth, but the adjudged cases furnish analogies which aid us in its solution. It is familiar law that, in a sale of chattels, a warranty of title is implied, unless the circumstances are such as to give rise to a contrary presumption. *Shattuck* v. *Green*, 104 Mass. 42. The possession and offer to sell a chattel is held

equivalent to an affirmation that the seller has title to it.   This is founded upon the reason that men naturally understand that a seller who offers a chattel for sale owns it.

The same rule has been extended to the case of a sale of a promissory note.   The seller impliedly warrants that the previous signatures are genuine.   *Cabot Bank* v. *Morton*, 4 Gray, 156. *Merriam* v. *Wolcott*, 3 Allen, 258.

So it has been held that, if one, honestly believing himself to be authorized, acts as agent for another, and procures money or goods upon the credit of his supposed principal, and it turns out that he is not authorized, he is liable for the value of the money or goods.   Chief Justice Shaw says:   " If one falsely represents that he has an authority, by which another, relying on the representation, is misled, he is liable; and by acting as agent for another, when he is not, though he thinks he is, he tacitly and impliedly represents himself authorized without knowing the fact to be true, it is in the nature of a false warranty, and he is liable."   *Jefts* v. *York*, 10 Cush. 392.   The chief justice adds: " But in both cases his liability is founded on the ground of deceit, and the remedy is by action of tort."   We do not understand him as intending to say that the only remedy is the technical action of deceit, and that a guilty knowledge must be proved.   He used the word " deceit " in the sense of tort.   In numerous other cases, the remedy is said to be an action on the case for falsely assuming to be an agent.   *Bartlett* v. *Tucker*, 104 Mass. 336, and cases cited.   And in the recent case of *May* v. *Western Union Telegraph*, 112 Mass. 90, it was held that the proper remedy is not an action of deceit; but " it is an action in the nature of a false warranty against one acting as agent, who represents that he has authority when he has not. Whether such representation is made in terms, or tacitly and impliedly, he supposing but not knowing the fact to be true, he is liable to the person misled."   We can see no good reason why an action of contract upon the implied warranty should not be maintained, in the same manner as it may be upon the implied warranty in the sale of chattels.   *Randell* v. *Trimen*, 18 C. B. 786.   *Richardson* v. *Williamson*, L. R. 6 Q. B. 276.   *Baltzen* v. *Nicolay*, 53 N. Y. 467.   But it is not necessary to discuss this, because in the case at bar there is both a count in

contract and a count in tort in the nature of case, for falsely assuming to act as an agent.

Perhaps these considerations are sufficient to dispose of this case; but it seems to us that the result would be the same if Pratt had signed the transfer on the back of the certificate, instead of the power of attorney. The difference between the two modes of effecting a transfer is theoretical rather than practical. There is in either case a similar implied representation or warranty.

If one buys stock and takes a transfer, and presents the certificate to the corporation and demands a new one, he thereby impliedly represents that he is entitled to the new certificate. He demands it as his right; this implies that he is the owner and has a right to it. The corporation has the right to understand him as asserting this. It is not bound to question or investigate the genuineness of the transfer, and see if the purchaser has not been defrauded. When the purchaser presents his transfer and certificate, the transfer officer naturally understands that he claims the transfer to be valid, and to have a right to a certificate; he has the right to act as if this had been said in terms. And if, relying upon such tacit and implied representations, the corporation suffers a loss, the purchaser who misled it is liable.

The case of *Simm* v. *Anglo-American Telegraph*, 5 Q. B. D. 188, is very much like the case at bar. The court of appeals held, overruling Lindley, J., that the loss must fall upon the purchaser who took the forged transfer, and not upon the company. Bramwell, L. J., says: "Burge and Company sent to the company a document purporting to be a transfer from Coates, and in effect demanded to be registered as transferees of the stock; to this demand the company assented. How can these facts constitute an estoppel against the company? What have they done that they should be debarred from saying that Coates did not transfer the stock?" In *Hambleton* v. *Central Ohio Railroad*, 44 Md. 551, the plaintiff, in good faith, advanced money upon stock of the defendant company pledged to them under forged powers of transfer. The railroad company, upon the receipt of the original certificates of stock, in good faith cancelled them, and issued new certificates in the name of the

plaintiff.   Afterwards, the plaintiff sold the stock to a third party; but the railroad company, having discovered the forgery, refused to permit a transfer to such third party.   It was held that the loss must fall upon the plaintiff, the court saying that it was the plaintiff's duty to ascertain the genuineness of the signature, and that the company were not estopped by having issued a certificate to him.   To the same effect is *Brown* v. *Howard Ins. Co.* 42 Md. 384.

These cases differ from the case before us in the fact that, at the time the forgery was discovered, the first transferee still held the shares.   But how can this make any difference?   The transfer to a third party by the defendants did not change their relations to the plaintiff; it did not purge their misrepresentations, or give any added weight to the act of the plaintiff in issuing to them a certificate.   Instead of holding the stock, they hold its proceeds.

The defendants have been cheated, but they have not lost their money by any act of the plaintiff; they lost it because they failed to make the inquiries necessary to detect the forgery. They have a remedy over against the person who sold the stock to them; but the plaintiff has no remedy except against the defendants.   We are of opinion that, in law and upon the equities of the case, the plaintiff is entitled to recover; and that it can maintain this action.

The remaining question is as to the measure of damages. The defendants contend that the measure is the value of the stock at the time the forgery was discovered.   The plaintiff contends that it is the amount which it was obliged to expend in order to replace Mrs. Pratt's stock, and the costs and expenses of the suit brought by Mrs. Pratt, but not including counsel fees.

In regard to the costs and expenses of the suit, we think the case falls within the principle of *Coolidge* v. *Brigham*, 5 Met. 68. That was an action of assumpsit upon the implied warranty that the signature of an indorser of a note transferred to the plaintiff by the defendant was genuine.   The plaintiff in good faith sued the indorser, who successfully defended, on the ground that his pretended signature was a forgery.   It was held that the plaintiff, having notified the defendant to come in and maintain the

genuineness of the indorsement, could recover his costs and expenses of the suit as a part of his damages caused by a breach of the warranty. In the case before us, the plaintiff notified the defendants of the suit of Mrs. Pratt, and requested them to defend it. It was their duty to defend their warranty of the genuineness of her signature. They refused to do so, and the costs and expenses incurred by the plaintiff in good faith in the attempt to defend the genuineness of the signature were a part of the actual loss sustained by it by reason of the defendants' breach of warranty.

The other question as to damages grows out of the fact that the stock rose in value between the time the forgery was discovered and the termination of the suit of Mrs. Pratt. If the stock had fallen in value, the defendants might well claim that they could not be held liable for anything more than the value at the time the plaintiff was required to procure it for Mrs. Pratt. It was not the duty of the plaintiff, upon receiving notice that Mrs. Pratt claimed the signature to be a forgery, to buy the stock and hold it at its own risk, any more than it was the duty of the defendants. They might have protected themselves at any time by buying five shares, and thus putting themselves into a position to meet their warranty. We can see no good reason why they should throw upon the plaintiff the risk of fluctuations in the stock. As soon as it was determined that the signature of Mrs. Pratt was not genuine, the plaintiff in good faith procured the stock to replace the five shares belonging to her. The amount paid by it was in fact the actual loss which it sustained, and we see no reason why it should not recover this amount of the defendants.

No question is raised as to the plaintiff's right to recover the dividends upon the stock, which it was obliged to pay to Mrs. Pratt; and, upon the whole case, we are of opinion that the finding of the Superior Court was correct, and that judgment should be entered thereon.

*Judgment for the plaintiff accordingly.*

*G. Putnam*, for the defendants, contended that, as the defendants acted in good faith, there was no implied warranty of the genuineness of Mrs. Pratt's signature, but only of their belief in its genuineness, and cited *Page* v. *Bent*, 2 Met. 371;

*Litchfield* v. *Hutchinson*, 117 Mass. 195, 198; *Tucker* v. *White*, 125 Mass. 344, 347; *Leather* v. *Simpson*, L. R. 11 Eq. 398; *Anglo-American Telegraph* v. *Spurling*, 5 Q. B. D. 188.

*J. C. Gray & W. C. Loring*, for the plaintiff.