DISSENTING OPINION BY
HURT, J.
§ 602. Purchaser of stock wrongfully transferred; liability of, over to company. In this case we have presented an important question, and I regret the fact that this court is unable to come to a unanimous conclusion upon its decision. This is not a contest between Wallis, guardian of the minor Lizzie Sears, and the company, nor between an innocent transferee of Kempner, for value, and the company. The question in this case is, whether the company has a remedy against Kempner, who presented a transfer of the certificate which was void, and upon the faith of which the company issued to him a new certificate. Again, the question as to whether the company, through its representations as to the validity of the transfer, induced Kempner to purchase, is not in this case, for Kempner purchased with *526 out consulting the company previous to the presentation of the transfer and demand for a new certificate. It must also be borne in mind that neither Kempner nor the company knew that the transfer was without authority; and that each acted in good faith to the other. After this brief statement I proceed to notice the reasoning of a majority of the court, as presented in the opinion by Judge Willson. Four propositions are formulated and submitted by Judge Willson. Let us concede the soundness of each. Do they, or either of them, form a premise from which any conclusion can be drawn bearing upon the issue in this case ? Let us examine them seriatim. 1st. “ That the company was a trustee for its stockholders.” This is unquestionably true; but Kempner was no stockholder, for, as was said by Bramwell, L. J., in the Simms Case, 5 Q. B. D. 188, “For aman to have a true title as the transferee of stock, his transferror must have had the stock — his transferror must have executed an instrument of transfer.” 2d. “That as trustee it knew that the stock registered on its books in the name of Lizzie Sears, a minor, could not legally be transferred by H. H. Sears, her guardian, without an order of the county court of Galveston county authorizing such transfer.” All of this Kempner knew, or was bound to know, as well as the company. But under what state of case is the company held to this knowledge? What parties? In a suit by the company to cancel or to recover the value of the stock against a person who presented a transfer which was without authority, and hence void, and upon the faith of which it issued to such a person a new certificate, the company is not held to any such knowledge.
Upon this subject Mr. Lowell says: “Of the capacity of the parties, the corporation has . not better means of knowing than the purchaser. In short, the corporation has not peculiar knowledge of these facts, and is not peculiarly bound to find them out. The purchaser of stock cannot, therefore, require a statement by the corn *527 pany that the transfer to him is valid, nor has he a right to treat a transfer on the books of a corporation, or the issue of a certificate to him, as a representation to that effect.” [Lowell on Trans, of Stock, 165.]
If, however, the suit be by the fame owner, and hence a stockholder, against the company, such a suit as the first branch of this case for Lizzie Sears, Wallis v. The Company, then the company is held to such knowledge. Not only so, but it was the duty of the company, as the trustee of Lizzie Sears, to be certain that the transfer from him was legal; and in order that there should be no mistake in this matter, the company should have made diligent inquiry as to the authority of the guardian to make the transfer. And it was upon these rules and principles that the company in this case was made to respond to Lizzie Sears for the value of her stock transferred by it to Kempner. But no such rules and principles obtain in the suit by the company against Kempner. To him the company does not occupy the relation of trustee, nor is it under any engagement or duty to him whatever. They stand at arm’s length. 3d. “It was a violation of this trust, an illegal and wrongful act, for the company to make the transfer in the absence of such an order.” And for this breach of trust and wrongful act the company has been made to suffer the full penalty by a judgment against it for the full value of the stock. There was no breach of trust as against Kempner. No wrongful act so far as he was concerned, or which affected him in the slightest degree; for, as before said, without consulting the company in any manner whatever, and before the presentation of the old, and the issuance of the new, certificate, he purchased, paid his money, and received the void transfer from the guardian. I have already answered the fourth proposition, showing that the duties and responsibilities of the company were due from it, not to Kempner, but to Lizzie Sears. This is fully conceded in the opinion by Judge Willson, and he admits that if this was a suit by Kempner against the *528 company, he could not recover. He submits, however, that as Kempner made or resorted to no direct misrepresentation, fraud or wrong practices, the company cannot recover of him. Now Kempner holds the company’s stock, not by any act, wrong, breach of trust or laches of the company; for which it never received one cent.
§ 603. Joint wrong-doers; who are; rules as to contribution between. But it is insisted that, as the company and Kempner were joint wrong-doers, and were liable to Lizzie Sears for the wrongful conversion of her property, therefore neither is responsible to the other, because one tort-feasor cannot compel contribution by the other. Let us examine this proposition and see if in fact these parties are joint tort-feasors. Judge Cooley, in his work on Torts, page 60, says: “The ways in which one may become liable to an action as for a tort are the following: 1st. By actually doing to the prejudice of another something he ought not to do. 2d. By doing something he may rightfully do, but wrongfully or negligently doing it, by such means, or at such time, or in such manner, that another is injured. 3d. By neglecting to do something which he ought to do, whereby another suffers an injury.” Kempner and the company are, as joint tort-feasors, by the opinion, placed in the first class, viz., acts actually done by them jointly to the prejudice of the minor’s interest in her right to stock in the company. The party’s liability for torts of this character may as well arise out of contracts, the breach of which will give the party injured his election to sue on the contract, or to sue for the tort; as, for instance, a false warranty, by means of which the seller is enabled to accomplish a sale of property; the purchaser may have his remedy upon the contract of warranty, or he may bring suit for the tort. [Cooley on Torts, p. 90.] So, because the mere fact that the acts don'e by Kempner and the company may admit of being treated consequentially as torts, does not, of necessity, reach and settle the question as to whether the transaction- was of *529 such a character as to exclude the consideration of legal remedies for adjudicating the rights of the parties which have reference to the contract feature of the transaction. No fraud or collusion is imputed to either Kempner or the company, nor is there charged any confederation between them to deprive the minor of her property. The company has been already held liable to the minor as for the tort, in wrongfully converting her property without legal authority; this was effected by destroying in effect her certificate of stock, and issuing the stock it represented to Kempner, which was done virtually, as we shall presently see, upon Kempner’s implied warranty of title to the same.
§ 604. Same; implied warranty of title. As between the company and Kempner, the liability of the latter, in the absence of fraud, was strictly upon the implied warranty by Kempner that he was the true owner of the certificate, and hence his liability arises strictly ex contractu, and no cause of action exists against him as for a tort. [Oooley on Torts, 90, 91.] And when there is a breach of warranty by the want of good title, the action does not he for tort, because the warranty is merely untrue in such cases; but it will lie for tort when the wrong consists in the warrantor having induced the purchase to be made by reason of fraud and falsehood in the warranty. The tort, says Mr. Cooley, in such a case is connected with the contract only as it enabled the tort-feasor to bring the party wronged into it. [Cooley on Torts, 90, 91.] In the case in hand,, Kempner’s warranty was not express, but simply implied, upon the general doctrine of warranting the validity of his title to personal property, and presents a stronger case than of express warranty without falsehood or fraud. There was neither a joint conversion of the stock, nor a common purpose to defraud the owner of it, between Kempner and the company. If such had been the case, the doctrine applicable to joint tort-feasors might be invoked. Each was liable to the minor separately, and distinctly and in- *530 dependency of each other. Kempner may be liable to the minor for the tort of converting the certificate of stock. The company may be liable also for the same thing. But their liabilities are separate aud distinct, and in no wise connected with a joint act of theirs, whereby they acted together for such conversion, though the conversion of the property may have resulted from the acts of both of the parties. Kempner, being the holder and supposed owner of a certificate for stock, surrendered it, and obtained a new certificate for same in his own name. He may be liable to the minor for thus depriving her of her property. The company may be liable for destroying the minor’s evidence of right to the property, and thus converting it; but their acts have no common purpose, as far as relates to a joint act of conversion of the property. In this respect there is no privity between them. They do not jointly acquire the new certificate, nor had they a common purpose to inflict a wrong on the minor. Each of them is responsible for his or its acts in the transaction, but they are not joint tortfeasors.
§ 605. Same; wrong intended and wrong not intended; different rules as to. Where several persons unite in a wrongful act to another, intending at the time to commit it, or doing it under circumstances which fairly charge them with intending the consequences which follow, it is a very reasonable and just rule of law which compels each to assume and bear the responsibility of the conduct of all. [Cooley on Torts, 133.] In such a case all are properly deemed to be tort-feasors; it is a case where all intended a wrong. But where wrongs are not intended, the rule is different. In such cases, it is said that several persons may be found blamable, but it does not follow that all can be held liable to the party wronged. The rule is general, in such cases, that the legal wrong is chargeable only to the party who, by his contract, assumes the duty, or upon whom the law imposes it. In other words, as the breach of the duty constitutes the *531 wrong, the person who, in legal contemplation, is the wrong-cloer, is the person who was burdened with the duty, and who has failed in its performance. [Cooley on Torts, 140.] In this case, duty or liability may have existed on or against either or both, but if against both, it was against them separately, and because of the distinct grounds of liability against each one for his or its individual acts and relations to the transactions, and not by virtue or reason of a duty or joint act for which they •both were answerable to the minor. Entertaining this view of the subject, I must conclude that the company cannot be denied the right to recover against Kempner upon the ground that they were joint tort-feasors.
§ 606. Contribution between joint wrong-doers may be compelled, when. But concede that they occupy such a relation as joint tort-feasors toward a third person, it does not of necessity result that as between themselves contribution would not be compelled. Mr. Cooley says: “ Two persons, we will suppose, are jointly concerned in a transaction, and in carrying it out according to arrangement, and without intent to injure others; they are nevertheless made liable by some invasion of another’s right. Here, if one were compelled to make good the loss, we should say his right to contribution was undoubted. As between himself and his associates he was not a wrong-doer at all.” [Cooley on Torts, 147, and notes.] “An English case,” says Mr. Cooley, “states the case as follows: ‘The rule that wrong-doers cannot have redress or contribution against each other is confined to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act.’” [Cooley on Torts, 148.] In Atchison v. Miller, 2 Ohio (N. S.), 203, it is held that the common sense rule and the legal rule are the same, namely, that when parties think they are doing a legal and proper act, contribution will be had; but when the parties are conscious of doing a wrong, courts will not interpose.” [Cooley on Torts, 148.] I have said all I desire to say upon the proposition *532 that Kempner and the company were joint tort-feasors, concluding from the authorities above cited and from reason that they were not.
§ 607. Public policy; question as to, discussed. I will now proceed to notice the proposition that it would be against public policy to permit the company to recover of Kempner under the facts of this case. Before entering upon a discussion of this proposition I desire to say that to permit the company to recover of Kempner would not and could not lessen the liability of it to the true stockholders. Upon this proposition Judge Willson says: “ It (the company) had no right to rely or act upon the representations of any stranger about matters which had been intrusted to it. Public policy, in our opinion, requires a strict enforcement of this duty, which the company owes to its stockholders. If the company can transfer stock, as in this instance, knowing that it has been transferred by a mere trustee, who was without power to make the transfer, and yet hold the transferee responsible for any loss that, may occur to it by reason of its wrongful act, it will certainly, it seems to us, greatly impair the security of stockholders and prove a fruitful source of fraud and litigation.” Now, I am not aware of the fact, nor does this record show it to be a fact, that the company knew that the trustee was without authority to transfer the stock. If such a case were before me, I would then address myself to a discussion of public policy. Nor can I understand how the company’s duties and responsibilities to its stockholders are involved in this branch of the case.
§ 608. Order of county court; need not accompany transfer. Again, it is apparent that the opinion of Judge Willson proceeds upon the idea that the action of the probate court, authorizing the transfer by the guardian, of the certificate, must accompany the transfer to Kempner to make it valid. And that, as the order of said court authorizing the transfer was not presented with the transfer, the company is held to know that no *533 order was ever made. Now, it is a fact in law, that if indeed an order had been made authorizing the guardian to sell said stock, and, in pursuance to said order, the certificate was sold by the guardian to Kempner, his title would be perfect, though the order for the sale did not accompany the transfer of the certificate. There was no missing link in the chain of title to Kempner which was patent or apparent to the company. The transfer by the trustee was not void because the court’s order of sale was not attached to and did not accompany the transfer.
§ 609. Equal equities; discussion of. I will now consider the proposition that both parties were equally free from blame in the transaction; that each acted in good faith; and if there was negligence, one was as careless as the other; and hence the maxim in cequali jure melior est conditio possidentis. The grand question presented in this case is, whether the parties’ rights are equal. Concede this, and the maxim applies. I will now examine these rights and see if they be equal. Kempner holds, and by the decision of a majority of this court owns, stock of the company for 'which the company has never received one cent. By what principle of right or justice shall he be allowed to enjoy the property of the company without paying it for the same? But, we are answered, the company shall lose this stock because of its negligence. Did its negligence, though ever so gross, induce Kempner to part with his money for this stock? Not by any means. He bought from the guardian, and got no title — no property. Did the transfer on the books, and a new certificate issued to him by the company, give him a title? Who will assert the affirmative of this proposition.
§ 610. Estoppel; rights of company against purchaser of stock wrongfully transferred. Was the company estopped by this transfer and the issue of a new certificate to him from claiming the value of the stock from him? This is the question in the case. For an answer to this question we are not left to grope our way in the *534 dark without authority. We have quite an array of decisions made by courts of splendid- attainments and ability. Let us here see what Oh. J. Martin of the supreme court of Massachusetts, as late as 1883, says upon the subject. He says: “If one buys stock and takes a transfer and presents the certificate to the company, and demands a new one, he thereby impliedly represents that he is entitled to the new certificate. He demands it as his fight; this implies that he is the owner and has the right to it. The corporation has the right to understand him as asserting this. It is not bound to question or investigate the genuineness of the transfer and see that the purchaser has not been defrauded. When the purchaser presents his transfer and certificate, the transfer officer naturally understands that he claims the transfer to be valid, and to have a right to a certificate; he has the right to act as.if this had been said in terms. And if, relying upon such fact and representations, the corporation suffers loss, the purchaser who misled it is liable.” [R. R. Co. v. Richardson, 135 Mass. 473.] To my mind, this is the true, the just and safe doctrine. And to the same effect are the following cases: Hambleton v. R. R. Co. 44 Md. 551; Brown v. Ins. Co. 42 Md. 384; Bank v. Martin, 4 Gray, 156; Merrier v. Walcott, 3 Allen, 258. On the other hand, I have not been able, after as thorough an investigation as I could give the subject at this place, to find a case holding a different doctrine, since the opinion of Judge Lindley in Simms v. Tel. Co. 5 Q. B. D. 188. Lindley was the nisi prius judge who tried the case. The case was appealed to the Queen’s Bench Division, and while neither of the judges except BramweU, L. J., expressed an opinion upon the subject, this learned judge did. He said: “ Burge & Co. sent to the company a document purporting to be a transfer from Coats, and in effect demanded to be registered as transferees of the stock. To this demand the company assented. How can these facts constitute an estoppel against the company? What have they done that they *535 should be debarred from saying that Coats did not transfer the stock?” I would here repeat the question of Bramwell, L. J.: What has this company done that it should be denied from saying that Lizzie Sears did not transfer the stock to Kempner?
§611. Implied warranty of chattel; rules as to. But it is contended by a majority of this court that the above authorities are not applicable, because, in those cases, the transfers were forged, whereas, in this case, there was no forgery. Now, upon principle, I fail to perceive the slightest difference or distinction in those cases and the one in hand. What is the principle of those cases ? Let us again examine and see if it is not broad enough to embrace this case. Chief Justice Martin, in a very plain and lucid manner, states the principle. He says: “It is a familiar law, that, in a sale of chattels, a warranty of title is implied, unless the circumstances are such as to give rise to a contrary presumption. The possession and offer to sell a chattel is held equivalent to an affirmation that the seller has title to it. This is founded upon the reason that men naturally understand that a seller who offers a chattel, for sale owns it. The same rule has been extended to a case of a sale of a promissory note. The seller impliedly warrants that the previous signatures are genuine.” [R. R. Co. v. Richardson, supra.] Now, it is not at all material as to how, or by what means, the transfer is void, whether by forgery or want of authority. These matters do not enter into the principle of the rule. It rests upon the broad ground that the seller of a chattel affirms by the act of selling that he has the title and has the right to sell. And in this case, when Kempner presented his transfer and demanded a new certificate, by his acts he affirmed, to all intents and purposes, and to the same effect as if in terms, that he held the title to the stock. And as in the case of a promissory note, he warranted and affirmed that all previous signatures were genuine, and that all previous transfers were legal and *536 proper. He impliedly affirmed that all necessary authority had been legally conferred upon the guardian to transfer the stock, because he impliedly warranted and affirmed ■that his title was perfect to the certificate of stock. I could gather around this rule for its support innumerable authorities, but I think it unnecessary to do so, believing that those cited are conclusive of the question. I am of the opinion that a rehearing should be granted, and that the judgment should be affirmed.
March 18, 1885.