## ORPHANS' COURT OF BALTIMORE CITY

Filed February 13, 1891.

IN THE MATTER OF THE ESTATE OF CHARLES MYERS.

*Benjamin F. Horwitz* for administrator.

*Hinkley & Morris* and *Steele, Semmes & Carey* for exceptants.

LINDSAY, GANS and EDWARDS, JJ.—

This is a case of exceptions to the ratification of sale by Mary Genevieve Forbes by George Forbes, her husband, and by the Baltimore Trust and Guarantee Company, made by Benjamin F. Horwitz and Alexius J. Myers, administrators d. b. n. c. t. a. of Charles Myers. The exceptions in both cases have been duly answered by the said administrators.

The cases were thoroughly argued before the Court by the respective counsel, and the Court has given to the law and facts in the cases their closest and most earnest attention

Charles Myers departed this life in June, 1862, having made his will in May preceding, which will was duly admitted to probate. He owned a large estate, real and personal, the residue of which he gave to his wife, Mary E. Myers, during her life, and appointed her the executrix of his said will. She duly returned an inventory of the personal estate and rendered a first and final account in the Orphans' Court, in which she turned over to herself the residue of the estate, which she retained as the widow of the deceased, subject to the conditions and provisions set forth in the will. The Court of Appeals, in the same estate, with the same parties, just recently decided that the above mode of distribution was full and complete, put the whole title in Mary E. Myers, tenant for life, and left nothing remaining in the Orphans' Court that would justify an administration d. b. n., unless other assets should be discovered which had never passed into her hands as executrix. THE DAILY RECORD, January 31, 1891.

Over all this residuum Mary E. Myers was left with weighty duties and large powers of selling, leasing, investing and reinvesting, so that she became not only life tenant with this full possession of title, but trustee also in effect for the remaindermen, and the equity Court must see to it that the remaindermen get what they are entitled to.

Among other parts of the estate of Charles Myers was a large lot of leasehold land, which was supposed to be in fee simple, and was on this account not returned in the inventory with the other personal property, nor accounted for in the Orphans' Court, but which was "devised" to her by the will of her husband, with the same weighty duties and large powers already described, upon which she created fourteen sub-ground rents, save one, which had been created by Charles Myers, exercising thereover, in pursuance of her power under the will, all the rights of ownership; all which acts she duly reported to the Circuit Court, by which they were approved and ratified. This was as far back as 1872.

Had Mary E. Myers power to give title to these rents, under the circumstances, or is there a necessity now, she being dead, to take out, for the purpose of giving or completing title to them, a d. b. n. administration?

1. It must be remembered that these sub-ground rents (save one) did not exist on this property when Charles

Myers died. They were created by his widow in pursuance of the power given by the will of her husband. They came into existence entirely as from her and by her act, and formed no part of the original estate.

2. This leasehold property, with the changes produced upon it by her, under the power, formed a part of her life estate, and forms now a part of the rest and residue of the estate of Charles Myers. It is true she did not return it in the inventory to the Orphans' Court, which "strictly speaking," as the Court of Appeals says should be done. This—though irregular and faulty—is yet not so seriously so as to destroy her title derived from the will. Her title so derived does not depend upon the inventory, nor necessarily even upon the orders of the Orphans' Court. By the will itself Mary E. Myers, as legatee, got an inchoate title; and when the debts were paid, which is presumed to have been done at the expiration of 13 months after the letters were taken out, and she as executrix assented to the delivery of the property to herself as legatee and tenant for life, which is also presumed to have been the fact, she being the same party in different capacities, her title became perfect. Matthews vs. Turner, 64 Md. 121.

And it is also true that Mary E. Myers, as executrix, did not account for this property in the Orphans' Court, and formally distribute it to herself, except as this was or may have been involved presumptively in the "residue" which she, in her account, turned over to herself as life tenant and legatee. But neither the failure to return this property in the inventory, nor the similar failure to formally turn it over to herself in her account, nor both of them combined, could deprive her of her title thereto under the will, and especially not when connected with the large powers of control over it which the will gave her, and which she, in fact, exercised. The equity principle, so essential in numerous instances in reaching substantial justice, that that which ought to have been done shall be considered as having been done, should, it seems to us, apply with peculiar force to this case. This property did become in fact a part of the rest and residue of the life estate of Mrs. Myers, and is now part of the rest and residue, under her own title, of the estate of the remaindermen.

These sub-ground rents—with the rest of the estate—constituting what was Mary E. Myers' life estate, being, together, the rest and residue of the whole estate of Charles Myers, exists now with a trust upon it, which, on this account, as in the case of Bianerman and Weaver, 8 Md. 518, is beyond the jurisdiction of the Orphans' Court, and can, in our opinion, only be finally and properly settled in a Court of equity.

We think that the Court of Appeals, in its last decision on this same estate, fully sustains the position we here take as to the forum in which the settlement of the matter in controversy can above be made. The Court says: "Mrs. Myers was given the power of changing investments and to sell any part of the estate and reinvest the proceeds, so that she became and was necessarily a trustee for those who were to take account of what she did under that power. So regarding herself'—the Court goes on to say—it appears that in March, 1872, she came into the equity Court of Baltimore City, and subjected herself to the jurisdiction of that Court over her trust under the will of her husband, Charles Myers. The funds of the property of that trust, being what passed into her hands as life tenant of the residuum of her husband's estate, it is the duty of the Court now that the trustee is dead"—not to appoint an administrator d. b. n. c. t. a. for Charles Myers' estate—but, "to bring the legal custodians of her estate, her executors or administrators, into this Court to account for that portion of the estate in her hands which belongs to this trust."

In view of the case then, to which we feel pushed by every consideration arising from it, there is absolutely nothing left of Charles Myers' estate in the Orphans' Court that could by any possibility justify an administration d. b. n. If the title to these rents was in Mrs. Myers, then it could not be in an administrator de bonis non of Mr. Myers' estate and nothing that such an administrator might or could do in the form, say of approval or endorsement, could be of any real service; on the contrary, it would only tend to create confusion as to the title and increase the general complication of the estate

already grown beyond what its leading features would seem to necessitate.

Wherefore it is ordered and decreed, this 13th day of February, 1891: 1. That the exceptions to the sales above reported be sustained and that the orders for the said sales be and the same are hereby revoked.

2. That the respondents pay the costs in the said cases.

---

Judge Phelps yesterday filed this opinion in the Circuit Court in the case of Lindsay T. Waters vs. Mary R. McKim et al., and Francis C. Taliaferro against Margaret T. McKim et al. The opinion states that each of the above is another of those distressing cases in which one of the two innocent parties is to sustain heavy loss through the fraud of a third. By agreement they were tried and are disposed of together. Without entering into some of the questions ably discussed at bar, such as the particular scope of Veazey's agency for the respective parties, and the tracing of the fund to the defendant's use, and assuming but not deciding that he was equally the representative of all parties, and that the fund was embezzled to his own use, there are well settled principles of justice aside from those considerations, generally found decisive of this class of cases. The principles referred to are substantially one, variously expressed according to the varying circumstances of different cases. The forms in which the rule appears to have been most frequently stated and applied both in law and equity, are as follows:

That one of two innocent persons should suffer the loss who has most trusted the guilty third party; 50 Md. 106, 44 Md. 29; or whose negligence enabled him to commit the fraud; 70 Md. 460; 64 Md. 355; 30 U. S. 425; or who by reasonable care could have protected himself; 100 U. S. 643, 33 Ch. D. 1; or whose conduct his misled the other, 31 Md. 548; 42 Md. 391; 43 Md. 324; 44 Md. 559. In the light of these principles the few material facts may readily be sifted from the voluminous record. The essential root-fact out of which this controversy grows is the *untrustworthiness of Veazey.* That is a proposition to which all parties can agree. It is equally certain that, at the critical period the plaintiffs were profoundly ignorant of this fact, while the same can by no means be said of the defendants. To what extent they were aware of it and how long before the Autumn of 1882, when the transactions in suit occurred, will sufficiently appear from their own testimony.

The judge decides that the plaintiffs are entitled to the relief prayed; the cancellation of releases; the enforcement of mortgages *in rem* and *in personam* except as to bona fide encumbrance of the co-defendant, Bonaporte, without notice. The opinion will appear in full in our columns later. Messrs. Brown & Brune and J. S. T. Walters represented the plaintiffs and Col. Charles Marshall and Luther M. Reynold, Esq., the defendants.