# Lake Superior Corporation, Appellant, *v.* Rebre.

*Corporations—Transfer of stock—Forgery of name of registered
owner—Guarantee of signature—Rules of stock exchange.*

A corporation may maintain an action against a person who pre-
sents a forged power of attorney to transfer stock on the faith of
which the corporation issues a new certificate of stock, although
such person acted in good faith; and it is immaterial that the per-
son who forged the name of the registered owner, guaranteed, as a
member of the stock exchange and in accordance with its rules, the
genuineness of the signature.

Argued Oct. 18, 1916.  Appeal, No. 161, Oct. T., 1916,
by plaintiff, from judgment of C. P. No. 1, Philadelphia
Co., Sept. T., 1913, No. 2624, on verdict for defendant in
case of Lake Superior Corporation v. Charles A. Rebre,
F. William Vogel and Eugene E. Carlin, Copartners,
trading as Rebre, Vogel & Carlin.  Before ORLADY, P. J.,
PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WIL-
LIAMS, JJ.  Reversed.

Assumpsit to recover the amount plaintiff was obliged
to pay to a registered owner of the stock whose certifi-
cate had been forged and sold to defendants who had it
transferred to themselves.  Before PATTERSON, J.

In addition to the facts stated in the opinion of the
Superior Court, it appeared that Charles H. Allen the
person who forged the name of Thomas Quinlan and
guaranteed the genuineness of the latter's signature was
a member of the Philadelphia Stock Exchange in good
standing at the time.

At the trial a verdict was rendered in favor of the de-

fendants. The plaintiff moved for judgment non obstante veredicto, but the court overruled the motion, and entered judgment on the verdict.

*Error assigned* was in overruling motion for judgment for plaintiff n. o. v.

*Boyd Lee Spahr,* with him *Ellis Ames Ballard,* for appellant.—One who presents a stock certificate for transfer thereby warrants the genuineness of the signature and is bound to reimburse the company making the transfer if it suffers a loss because the signature turns out to be a forgery: Boston & Albany R. R. Co., v. Richardson, 135 Mass. 473; Brown v. Howard Fire Insurance Company, 42 Md. 384; Hambleton v. C. O. R. R. Co., 44 Md. 551 (1876); Trimble v. Union National Bank, 71 Mo. App. 467; Starkey v. Bank of England, A. C. 114 (House of Lords); Simm v. Anglo-American Telegraph Co., 5 Q. B. D. 188.

The above rule applies although there is also a written guaranty by a member of the exchange. While it is true that this additional feature does not appear in any of the cases cited above, it is submitted that on principle and on authority the rule remains the same, unless it is shown that the company making the transfer relied solely on the written guaranty: Gurney v. Wormersley, 4 Ellis & Bl. 132; Meyre v. Richards, 163 U. S. 385; Swanzey v. Parker, 50 Pa. 441; Flynn v. Allen, 57 Pa. 482; Giffert v. West, 33 Wis. 617; Starkey v. Bank of England, A. C. (1903) 114 (House of Lords).

The burden was on the appellees to show that the appellant acted solely upon the written guaranty: In Daley v. Iselin, 212 Pa. 279.

*Howard H. Yocum,* of *Biddle, Paul & Jayne,* for appellee.

OPINION BY TREXLER, J., March 7, 1917:

Charles H. Allen received a certificate for twenty shares of the capital stock of the Lake Superior Corporation from Thomas Quinlan, the owner. He forged Quinlan's name to the power of attorney, attached a guarantee of the genuineness of the signature, as required by the rules of the stock exchange and passed the certificate to Rebre, Vogel and Carlin, the defendants and appellees who purchased the same in good faith. They presented it to the company's transfer office and received a new certificate. Subsequently, Quinlan filed a bill in equity against the company to recover the value of his stock and under the decree of the court the company was obliged to pay Quinlan the value thereof. The company then brought this suit against the defendants, Rebre, Vogel and Carlin, to recoup the loss arising out of the transaction.

It is conceded by counsel of both parties that a corporation may maintain an action against a person who presents a forged power of attorney to transfer stock upon the faith of which the corporation issues a new certificate of stock although such person acted in good faith. This is in accord with the authorities. The case most frequently referred to is that of Boston & Albany R. R. v. Richardson, 135 Mass. 473. It is there held "If one buys stock and takes a transfer and presents the certificate to the corporation and demands a new one, he thereby impliedly represents that he is entitled to the new certificate. He demands it as his right. The corporation has the right to understand him as asserting this. It is not bound to question or investigate the genuineness of the transfer and to see if the purchaser has not been defrauded. When the purchaser presents his transfer and certificate, the transfer officer naturally understands that he claims the transfer to be valid and to have a right to a certificate, he has the right to act as if this had been said in terms. And if, relying upon such tacit and implied representations, the corporation suf-

fers a loss, the purchaser who misled it is liable. See also Hambleton v. C. O. R. R. Co., 44 Md. 551; Brown v. Howard Fire Ins. Co., 42 Md. 384; Cook on Corporations, 6th Ed. 366; Thompson on Corporations, 2d Ed. 3569. This principle is analogous to that which implies a warranty of title in the sale of chattel.

There is one fact in the case before us which is not found in those above cited and that is the guarantee of Allen of the signature of Quinlan. The presence of this led the court below to leave to the jury the question whether the presentation of the certificate implying the validity of the transfer or whether the guarantee of Allen was the inducing cause of the company's entering the transfer and issuing the new stock. It was left to the jury to determine whether the act of the defendants misled the plaintiff corporation or whether the officer entering the transfer relied solely upon the written guarantee of Allen.

The transfer agent of the plaintiff was called and testified that according to the rules of the stock exchange the signature had to be guaranteed by a member in good standing; that in making the transfer she relied upon the presentation of the certificate by the defendants who brought it in, that presentation being a guarantee that "everything before it is correct." She also said that she relied both upon the written guarantee of Mr. Allen and the presentation by Rebre, Vogel and Carlin. As the case was submitted, the verdict of the jury was necessarily based upon the conclusion that under the evidence in the case the plaintiff relied solely upon the written guarantee of Allen and that by reason of such reliance the guarantee of title to the shares arising from the presentation of the certificate by the defendants was of no effect. We do not think there was any evidence to support such finding, but apart from this we do not take the view that the guarantee of Allen affects the responsibility of the defendants in the matter. It is true that when one buys a chattel under a warranty, if it can be shown that he did

not rely upon the warranty he cannot recover damages by reason thereof. That situation arises when the knowledge of the purchaser extends to the subject-matter of the warranty and he knows that the thing purchased is not as warranted or where the opportunity of inspection is presumed to be the equivalent of knowledge.

We take the view that both Allen and the defendants were liable, the one under his guarantee of the signature and the other under the implied engagement that the presentation of the certificate implied its validity. The rule of the stock exchange, providing that a broker presenting a certificate of stock should guarantee the signature, is but placing an additional safeguard to that which had already existed by reason of the assurance of validity implied by the presentation of the certificate.

Of course if it could be shown in this case that the transfer agent of the company had knowledge of the invalidity of the transfer, the position taken by the appellees would be correct. We do not however see that the party presenting the transfer and by his act asserting title to it and the right to demand a transfer can escape his engagement in this respect by contending that someone else had guaranteed the genuineness of this transaction, nor is the corporation required to prove the mental attitude or the degree of faith the transfer officer had in either of the two parties. Her mind may have been a blank on the subject but the implied guarantee of title was nevertheless present.

The failure of title in the party presenting the certificate destroyed the basis of the whole transaction. The damages occasioned by it are recovered by the very nature of the relations between the parties, the title of the party demanding the transfer being implied. There is an evident distinction between a warranty of a chattel as to certain qualities and as to the title of the chattel. The warranty as to quality has merely to do with something connected with the subject-matter of the contract of sale but a failure of title as between the parties de-

stroys the very thing bargained and causes a total failure of consideration. As the defendants presented a transfer and they thereby caused the loss to the plaintiff, it can get back the money so lost, by suit against them. We are of the opinion that the plaintiff under the facts produced should have had the verdict.

The judgment is reversed and the record remanded that the judgment be now entered in favor of the plaintiff.