WILLIAM B. LLOYD v. SAMUEL QUIMBY.

L. executes to Q. a mortgage containing full covenants of warranty to secure
the payment of $625, payable in installments. Part of the installments be-
ing due and unpaid, and pending proceedings for foreclosure and sale, by
agreement of parties, a decree of simple foreclosure is entered, and the notes
evidencing the debt surrendered. Subsequently Q. is evicted under a prior
mortgage, hitherto unknown to either party, executed by L.'s grantor.
Held :

1. The mortgage to Q. is not merged or in any way affected as a conveyance
by the decree of foreclosure ; its covenants of warranty remain in full force
and vitality ; and an action against L. may be maintained on them.

2. Q. was not bound to discharge the prior mortgage, but might well rely on
the covenants of warranty.

3. The rule of damages, where the eviction goes to the entire estate, is the
amount of the debt with interest, discharged by the foreclosure.

IN error to the District Court of Cuyahoga county.

The facts and questions in the case are stated in the opinion
of the court.

*C. Stetson*, for plaintiff in error.

*Mason & Estep*, for defendant in error.

BRINKERHOFF, J. This is a petition in error, filed by leave
in this court, to reverse the judgment of the district court of
Cuyahoga county, rendered at its October term, 1854, in favor
of the defendant in error against the plaintiff in error. The facts
of the case are substantially as follows :

In the year 1839, William B. Lloyd executed his deed of
mortgage, containing full covenants of seizin, warranty, and
against incumbrances, for the nominal consideration of one dol-
lar, but really to secure the payment in installments of $625, to
Samuel Quimby, on 66½ acres of land in Lorain county. A part
of the installments having become due, and all being unpaid,
Quimby, in 1843, filed in the common pleas of Lorain county his
bill in chancery for the foreclosure of his mortgage ; and there-
upon, in pursuance of an agreement between and by consent of

parties, a decree of foreclosure simply, without sale, extinguishing Lloyd's equity of redemption in the premises, was entered in said court; and thereby the debt, for the security of which the mortgage had been executed, was, by agreement of the parties, considered as discharged, and the notes by which it was evidenced were surrendered.

In 1845 proceedings were commenced upon a prior mortgage hitherto unknown to both parties, which had been executed on the same premises by Lloyd's grantor, to one Dodd; and under this proceeding the land was sold and Quimby evicted. The amount due on Dodd's mortgage was some $355, and the land was sold for less than that sum.

In 1853, Quimby brought his action against Lloyd on the covenants contained in his mortgage; the district court rendered judgment for the amount which the mortgage was given to secure, and interest; and it is to reverse this judgment that this petition in error is filed. And it is claimed in behalf of the plaintiff in error—

1. That, on this state of facts, no action can be maintained by the mortgagee against the mortgagor for any breach of the contract contained in the mortgage, for the reason, as is alleged, that, on the foreclosure of the mortgage, it was merged in a higher title than any which it conveyed.

Now what was the effect of the decree of foreclosure, taken in connection with the agreement of the parties in pursuance of which it was entered? Its effect was, first, to satisfy and discharge the debt to secure which the mortgage was given; and the decree would, doubtless, operate as a bar to any future proceeding on the mortgage to enforce a payment of the debt. But did the decree operate as an extinguishment or merger of the mortgage as a conveyance, or affect in any way the obligations of the covenants it embraced? If it did, then where was Quimby's evidence of title? The decree furnished none; for that, by its terms, merely foreclosed and extinguished Lloyd's right in equity to redeem. The decree conveyed no title; and if the mortgage, regarded as a conveyance, was merged by the decree, there was left to Quimby no subsisting evidence of title whatever.

The mortgage itself, from the moment of its execution, conveyed to Quimby an estate in fee simple as against the mortgagor, on which he might have maintained ejectment against him; nothing was left in the mortgagor except his equity of redemption; and *that*, and that only, being extinguished by the decree, we think the mortgage, from thence forward, stood as an absolute conveyance in fee, with all its covenants in full force and vitality. The case of *Lockwood* v. *Sturdevant*, 6 Conn. R. 373, is substantially analogous to, and covers all the points arising in the case before us; and we have been able to find no case which at all conflicts with the principles which we think there well settled. In that case, Hosmer, C. J., delivering the unanimous opinion of the court, says:

" Mortgage deeds generally, if not universally, are secured by covenants of title; and the equity of redemption is extinguished by release or foreclosure. In the event of a release from the mortgagor, it cannot be presumed to have been the intention of the parties to extinguish the mortgage title; and in both events, of release and foreclosure, it would be unjust and inconvenient to hold this as legal doctrine. The title to the estate may be found fatally defective; and of this the case under discussion is a full illustration. That the debts secured by the mortgage should be faithfully paid, was the intention of both parties; and to this end the release was executed and the note given up. The mortgage title, guarded by covenants, is the plaintiff's only security; and it would be flagrantly unjust, and in opposition to general convenience, to hold that the title by mortgage should merge, and the plaintiff be remediless. Upon the same principle, on decree of foreclosure, the mortgagee would be without remedy, if his title should prove defective."

Counsel attempts to draw a distinction between a decree of foreclosure in this State, and such a decree in Connecticut and elsewhere. In this he is quite unsuccessful, so far as concerns the object and effect of the decree. Our courts prescribe terms on which alone such decree may be taken, different from any known to most other courts, to wit, that two-thirds of the appraised value of the mortgaged premises shall not exceed the

debt; but the object and effect of the decree is the same every where, and that is, simply the extinguishment of the equity of redemption.

2. It is claimed for the plaintiff in error, that, admitting a right of action, the measure of damages is the nominal consideration expressed in the conveyance—which, in this case, is one dollar. No authority is adduced in support of this proposition; and, on principle, it does not commend itself very strongly to our judgments.

It is claimed,

3. That, admitting a right of action to exist, the recovery of the grantee in the mortgage must be limited to the amount of the prior incumbrance; because the grantee might have discharged the incumbrance, and thus have prevented an eviction.

It is true, the grantee, while the prior mortgage remained only an incumbrance, might have discharged it, if he possessed the pecuniary ability, and thus have saved himself from eviction; but then, so might the grantor; and the grantee, whether able or willing, or not, was in no way bound to do it, and had a right to expect that the grantor would do it—while he, the grantor, was bound to do it—bound by the obligations of his express covenant. *Miller* v. *Halsey*, 2 Green's Rep. 48. Nor can the mutual ignorance of the parties, up to the time of the commencement of proceedings on the prior mortgage, of the existence of that mortgage, at all alter the case. The obligation of covenants of warranty cannot depend on the knowledge, or want of knowledge, of the parties to the covenants. If it could, covenants of warranty would be of little avail; for one of the leading inducements to the requirement of such covenants is, that they may serve as a safeguard against possible ignorance of his own title on the part of the vendor. If a grantor, then, in violation of his covenants, suffers an incumbrance to ripen into a paramount title, and the eviction of his grantee from the entire estate follows, he becomes liable on the covenant of warranty for the full amount of the purchase money and interest, which, in this case, is the amount of the debt discharged by the decree of foreclosure; such being the

rule of damages settled in *King* v. *Kerr's Administrators*, 5 Ohio Rep. 155, and prevailing generally in this country.

<div align="right">

*Judgment affirmed.*