CHANCELLOR C. ALLEN *vs.* SOUTH BOSTON RAILROAD
COMPANY.

REBECCA B. CRAFT *vs.* SAME.

Suffolk.    January 15, 21, 22, 1889. — November 29, 1889.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN,
& KNOWLTON, JJ.

*Corporation — Fraud — Knowledge of Agent — Damages.*

The treasurer of a corporation, who was supplied by the president with blank cer-
tificates of its stock signed by him, was also a stock-broker. He told a customer
on one occasion that he had purchased shares of the stock for her as ordered,
and she paid him therefor. On another occasion he ordered certain brokers to
sell shares of stock for him, and they did so, and received payment therefor.
He owned no stock, and held none as agent or otherwise, and the whole amount
of the capital stock had already been issued. In each case he fraudulently
made a fictitious transfer of stock on the books of the corporation, in one case
from himself as agent to his customer, and in the other from himself as agent
to the brokers, and, by means of a blank power of attorney furnished by the
brokers and delivered to him, made a further transfer as their attorney to their
customer. He then filled out blank certificates of the shares in the usual form
under the corporate seal, and delivered them to the purchasers, each of whom
received dividends regularly until the fraud was discovered; after which the cor-
poration refused to recognize the certificates as valid, or to allow a transfer of
the stock. The purchasers and the brokers acted in good faith, and the brokers
acted according to the general custom of brokers. The treasurer had made
nearly all the transfers of stock on the books of the corporation as attorney
under like powers; and it was not the custom of brokers to take transfers of
certificates to themselves when ordered to sell stock. In neither case was any
certificate of stock in the name of the seller exhibited to the purchasers. *Held,*
in actions against the corporation to recover damages caused by such refusal,
that the purchasers exercised due care in obtaining the transfers; that the
treasurer in issuing the certificates was the agent of the corporation, which
must bear the loss; that his knowledge of his own fraud while acting as broker
was not to be imputed to his customer; and that the measure of damages was
the market value of the shares at the time the corporation first refused to recog-
nize the certificates as valid.

TWO ACTIONS, alleged in the writ to be in contract or tort, to
recover damages sustained by the refusal of the defendant cor-
poration to recognize as valid certain shares of stock held by
the plaintiffs, or to allow them to be transferred, and to issue
new certificates therefor.

The cases were submitted, on agreed facts, to the Superior
Court, and, after judgment in the first case for the plaintiff, and

in the second case for the defendant, to this court, on appeal. The facts, so far as material, appear in the opinion.

The cases were argued at the bar in January, 1889, and afterwards were submitted on the briefs to all the judges, except *Holmes,* J.

*J. E. Abbott,* for the plaintiff in the first case.

*S. Lincoln,* for the plaintiff in the second case.

*J. G. Abbott,* (*C. T. Gallagher & J. S. Dean* with him,) for the defendant.

FIELD, J.  In the first case, William Reed, who was the treasurer of the defendant corporation and also a stock-broker, ordered Henshaw and Company, brokers, to sell for him, at auction, ten shares of the stock of the defendant, and the plaintiff, on November 25, 1882, bought of them the ten shares at auction, and paid them for the stock on November 28; Henshaw and Company then executed and delivered a power of attorney to the plaintiff for the assignment of ten shares at any time within ten days from date, the names of the purchaser and of the attorney being left blank.  The plaintiff on November 29 took this power of attorney to the office of the defendant, delivered it to Reed, the treasurer, who inserted in it his own name as attorney, and the name of the plaintiff as assignee. He then made out in the name of the plaintiff, and delivered to him, a certificate of ten shares of stock in the usual form, under the seal of the corporation, signed by the president and by himself as treasurer.  The president was in the habit of leaving with Reed blank certificates of stock signed by him, and one of these Reed filled up and signed as treasurer, and delivered to the plaintiff.  Reed afterwards entered on the transfer-book a transfer of ten shares from himself, as agent, to Henshaw and Company, and then a transfer of these ten shares by himself, as attorney for Henshaw and Company, to the plaintiff.  Reed in fact had no stock, either as agent or in any other capacity, and the whole amount of stock which the defendant was authorized to issue had then been issued to other persons.  The plaintiff acted in good faith, but Reed's intention was fraudulent throughout the whole transaction.  The plaintiff was at this time the owner and holder of another certificate of four shares of stock, and after this he received dividends on fourteen shares, and his

name as owner of fourteen shares was entered on the dividend sheets of the corporation, and in its annual returns, until the frauds of Reed were discovered, in 1886.

In the second case, the plaintiff was a stockholder of the defendant, and, having money to invest, in January, 1882, applied to Reed as a broker to buy for her eight additional shares of the stock of the defendant. Reed informed the plaintiff that he had bought the shares for her, and she in good faith paid him for them, and received from him a certificate in her name of eight shares of stock in the usual form, under the seal of the corporation, signed by its president and by Reed as its treasurer. He obtained the certificate by filling up one of the blanks which the president had signed and left with him. Before doing this, he entered on the transfer-book of the defendant a transfer of eight shares to the plaintiff from himself as agent; but he in fact had no stock as agent or otherwise, and he bought no stock for the plaintiff, and the corporation had already issued all its capital stock. The plaintiff's name as holder of these shares was entered on the dividend sheets of the company, and semi-annual dividends were paid to her, and her name was also regularly entered as owner of these eight shares in the annual returns made to the commissioner of corporations until 1886, when this and many other frauds of Reed were discovered.

The agreed facts in both cases show gross carelessness on the part of the president in signing certificates in blank, and negligence on the part of the directors in not examining the books and discovering the fictitious transfers of stock made by Reed. In both cases, after the frauds were discovered, the defendant refused to recognize the certificates of stock as valid, and refused to allow them to be transferred, or to issue new certificates.

The counsel for the defendant does not deny that, if these certificates of stock had been sold and duly assigned by the plaintiffs for value to one who had no knowledge that they had been fraudulently issued, the defendant would be liable in damages to the purchaser. He admits the general rule that a corporation is estopped to deny the validity of certificates issued in proper form under its seal, and duly signed by the officers authorized to issue certificates, if they are held by persons who

took them for value without knowledge or notice that they had been fraudulently issued. *Moores* v. *Citizens' National Bank,* 111 U. S. 156. *Boston & Albany Railroad* v. *Richardson,* 135 Mass. 473. *Machinists' National Bank* v. *Field,* 126 Mass. 345. *Pratt* v. *Taunton Copper Manuf. Co.* 123 Mass. 110. *New York & New Haven Railroad* v. *Schuyler,* 34 N. Y. 30, 64. *Titus* v. *Great Western Turnpike,* 61 N. Y. 237, 245. *Holbrook* v. *New Jersey Zinc Co.* 57 N. Y. 616. *Shaw* v. *Port Philip Mining Co.* 13 Q. B. D. 103. But he contends that the plaintiffs were negligent in accepting the new certificates without taking pains to ascertain whether old certificates of a corresponding number of shares had been surrendered, and a transfer made upon the books of the company.

Each certificate of stock in the defendant company, as the plaintiffs knew, declared that the shares are " transferable by an assignment in the books of said company upon a surrender of this certificate. When a transfer shall be made in the books of the company, and this certificate surrendered, a new one will be issued." See Pub. Sts. c. 113, § 13.

The contention is, that one object of this provision was the protection of the corporation against the frauds of its officers in issuing false certificates, and that if the plaintiffs in these cases had required that a certificate of shares be delivered to them with an assignment of it, or a power of attorney to assign it, Reed could not have committed these frauds. We do not see why Reed, having been intrusted with blank certificates signed by the president, might not have issued certificates to himself, and then assigned them when the stock was sold, and on the surrender of the old certificates have issued new certificates. Perhaps the chances of detection would have been slightly greater if he had proceeded in this way. But certainly this provision regulating the transfer of stock, if intended as a protection to the corporation against the frauds of its officers, is insufficient. The primary purpose of it undoubtedly was to prescribe the manner in which such intangible property as shares of stock should be transferred from one person to another, and it required the transfers to be made on the books of the company that the company might know who its stockholders were, and it required the surrender of the old certificate before the

new one was issued, that there might not be two or more certificates outstanding for the same shares of stock. .

· The ground on which a corporation is held liable to a *bona fide* purchaser for value of false certificates of its stock issued under its seal, signed by the proper officers, and apparently genuine, is that the certificates are statements by the corporation of facts which it is its duty to know, and which cannot well be known to the purchaser. It is the duty of the proper officers of the corporation to ascertain that· its stock has been transferred in accordance with its by-laws, and in accordance with law, before they issue a new certificate. The transfer, which must be made on the books of the company, must be made by the owner of the old certificate, or by his attorney for him. The surrender of the old certificate must also be made by him or by his attorney. There is no provision that it shall be made by the purchaser, as the assignee or the attorney of the seller. If the seller undertakes with the purchaser to make the surrender and the transfer on the books of the company, the only thing left for the purchaser to do is to call upon the corporation for the new certificate. We see no good reason for holding that there is a duty on the part of the purchaser towards the corporation, to see to it that the seller of stock surrenders his certificate and transfers it on the books of the corporation. That is the duty of the corporation towards both the seller and the purchaser before it issues a new certificate.

If the purchaser exhibits to the corporation a forged assignment of stock, or a forged power of attorney to assign it, and thus obtains a new certificate which he sells, he is liable to the corporation, not because it is his duty to attend to the transfer of stock, but because he has impliedly represented the forged signature to be the genuine signature of a stockholder, whereby he has deceived the corporation. *Boston & Albany Railroad* v. *Richardson*, 135 Mass. 473. Before the passage of the St. of 1884, c. 229, if not since, the transfer of stock was usually attended to by brokers, if the stock was bought and sold through brokers. Many shares of stock represented by a single certificate were often sold in parcels to many different persons, and the seller made but one surrender, with powers of attorney to transfer the parcels to the different purchasers. A purchaser of stock vio-

lated no duty to the corporation when he trusted to the seller to make the assignment and the surrender of the old certificate. The utmost that can reasonably be contended is, that the fact that a. certificate was not exhibited and delivered with a power of attorney to the purchaser was a circumstance to be considered upon the question whether the purchaser acted in good faith and with due care.

In the first case, it is expressly agreed that " Henshaw and Company acted in good faith, and the whole transaction on their part was in accordance with their general custom, and in accordance with the general custom of brokers in Boston "; that " nearly all of the transfers of defendant's stock made on its books while said Reed was its treasurer, and being upwards of two thousand in number, were made by said Reed as attorney of the parties making the transfer" and that " several hundred of said transfers, the validity of which has never been questioned by said corporation, were made by virtue of powers of attorney like that given by Henshaw and Company, and where no certificate of the stock so transferred was ever issued to the person or firm giving the power of attorney for the transfer," it not being " the general custom of brokers in the city of Boston to take certificates of stock in their own names " when " transferred to them for the purpose of sale."    On these facts, we think it clear that Allen exercised due care in obtaining a transfer of the stock, and that Reed in making the transfer was not his agent, but the agent of Henshaw and Company, or the undisclosed principal.    In issuing the new certificate, he was the agent of the defendant, and as the plaintiff cannot now be put *in statu quo*, the defendant must bear the loss.

In the second case, the plaintiff received from Reed, as broker, a certificate, in her name, of the stock which he said he had bought for her, and there is nothing to show that this was not the usual way in which brokers transacted such business.    Apparently Mrs. Craft acted as a purchaser through a broker usually acted, and we see no want- of due care on her part.

Another question arises in her case from the fact that Reed, who committed the fraud upon the defendant, was also her agent in the transaction.    If he be regarded as acting in two

capacities, and as having committed the fraud in his capacity as treasurer, he yet as her agent knew of and participated in it. Is this knowledge to be imputed to her in determining her rights against the defendant?

The general rule is, that notice to an agent, while acting for his principal, of facts affecting the character of the transaction, is constructive notice to the principal. *Suit* v. *Woodhall*, 113 Mass. 391. *National Security Bank* v. *Cushman*, 121 Mass. 490. *Sartwell* v. *North*, 144 Mass. 188. *The Distilled Spirits*, 11 Wall. 356. There is an exception to this rule when the agent is engaged in committing an independent fraudulent act on his own account, and the facts to be imputed relate to this fraudulent act. It is sometimes said that it cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal, and that the doctrine of imputed knowledge rests upon a presumption that an agent will communicate to his principal whatever he knows concerning the business he is engaged in transacting as agent. It may be doubted whether the rule and the exception rest on any such reasons. It has been suggested that the true reason for the exception is that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and therefore knowledge of it, as matter of law, cannot be imputed to the principal, and the principal cannot be held responsible for it. On this view, such a fraud bears some analogy to a tort wilfully committed by a servant for his own purposes, and not as a means of performing the business intrusted to him by his master. Whatever the reason may be, the exception is well established. *Kennedy* v. *Green*, 3 Myl. & K. 699. *Espin* v. *Pemberton*, 3 DeG. & J. 547. *Rolland* v. *Hart*, L. R. 6 Ch. 678. *In re European Bank*, L. R. 5 Ch. 358. *Cave* v. *Cave*, 15 Ch. D. 639. *Kettlewell* v. *Watson*, 21 Ch. D. 685, 707. *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332. *Dillaway* v. *Butler*, 135 Mass. 479. *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268. *Howe* v. *Newmarch*, 12 Allen, 49.

This case seems to us to fall within this exception. Although the fraudulent act of Reed may not have been committed with the intention of cheating the plaintiff, yet that was its legal

effect, and it was a fraudulent act committed by him for his own benefit, the actual effect of which would have been wholly to avoid the transaction if the plaintiff had known of it.

The present cases, we think, fall within the principle, that, where one of two innocent persons must suffer a loss from the fraud of a third, the loss must be borne by him whose negligence enabled the third person to commit the fraud.

The defendant cannot be compelled to issue new certificates, or to recognize the old ones as valid, because to do so would cause an over-issue of its capital stock, but it is liable in damages. In assessing damages, the Superior Court has taken the value of the stock to be its market value at the time when the defendant first refused to recognize the stock as valid and to permit a transfer of it. This would be the rule of damages if the certificates were valid. *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90. *Wyman* v. *American Powder Co.* 8 Cush. 168. We think that the same rule of damages applies to these certificates. *In re Bahia & San Francisco Railway,* L. R. 3 Q. B. 584.

The cases having been submitted on agreed statements of fact, no question arises as to the form of the actions. Upon the plaintiffs severally filing in the Superior Court the certificates properly assigned to the defendant, judgments may be entered for the plaintiffs.                           *So ordered.*