MORGAN, APPELLANT, *v.* REESE ET AL., APPELLEES.

(No. 381—Decided July 24, 1954.)

*Messrs. Meredith & Meredith,* for appellant.
*Messrs. Unverferth & Unverferth,* for appellees.

MIDDLETON, J. The plaintiff brought this action in the Court of Common Pleas seeking a money judgment from the defendants, which money she alleges is due her as her share from the sale of the premises described in the petition.

The cause was tried, by agreement, to the court without the intervention of a jury.

Upon trial, the court found for the defendants and entered judgment accordingly. It is from that judgment that the plaintiff prosecutes this appeal on questions of law.

The petition, in substance, sets forth that in 1949 the parties to this action were the owners of the real estate therein described; that the interest of the plaintiff in said real estate was in dispute; that all the parties desired to sell the land and distribute the proceeds, providing a sale could be arranged; that all the defendants agreed with plaintiff that if she would join in a contract to sell the real estate and join in the execution

of a warranty deed conveying the title to the premises and warranting the same to be free of encumbrances, except taxes and assessments due and payable in June 1950 and thereafter, she would receive one-fifth of the proceeds of sale after the payment of the expenses incident to the sale; that the parties agreed to sell the premises to Dwight E. Downing and Edna G. Downing for $28,000; that plaintiff, relying upon the representations of the defendants that she would receive one-fifth of the purchase price, signed a contract of sale and joined with defendants in a warranty deed to the purchasers; that plaintiff fully carried out the promises on her part to be performed, and the purchasers paid the purchase price to the defendants; that defendants have failed and refused to pay the plaintiff her one-fifth share as agreed upon, although all the defendants have been paid in full; and that plaintiff has made demand for the one-fifth of the proceeds of sale, but the defendants refuse and neglect to pay her. Plaintiff prays judgment against the defendants for the sum of $5,600, with interest.

To this petition the defendants filed their answer and cross-petition.

For answer, the defendants admit they were the owners of the real estate described in the petition and allege that the plaintiff had no interest therein. They admit that the land described was sold and proper deed delivered to the purchasers. Further answering, the defendants deny the allegations in the petition not specifically admitted in the answer to be true.

By way of cross-petition, the defendants say that Edward Morgan was a brother of Thomas Morgan; that plaintiff is the widow of Edward Morgan; that Edward Morgan died on the 24th day of February 1945; and that Thomas Morgan died testate on October 16, 1943, and his will, which was duly probated, provided in item II thereof, as follows:

"Item II. I give, devise and bequeath to my sister-in-law, the said Miss Nettie Reese, all of the real estate, including buildings thereon, which I may own at the time of my decease, to be hers and to enjoy the income therefrom during her lifetime and upon her death I give, devise and bequeath all of my said real estate including buildings thereon, to those persons who at the date of her death are my legal heirs under the laws

of the state of Ohio, to be divided among them per stirpes. In the event my said legal heirs are unable to agree as to the division of my said real estate, upon the death of my sister-in-law, the said Miss Nettie Reese, I direct that the person who is then my legal representative shall sell the said real estate at public sale and shall divide the proceeds therefrom among my said heirs, per stirpes.''

The cross-petition then sets forth that Nettie Reese, life tenant named therein, died on the 18th day of September 1949.

Defendants aver it was assumed, at the time of the probate of the will and for some time thereafter, that Nettie Morgan had an interest in the land described in the petition; that, after receiving legal advice and after a more careful study of the will, the defendants came to the conclusion that Nettie Morgan had no interest in said land; and that, when it was discovered Nettie Morgan had no interest in said land, the inheritance tax which had been paid for her was returned to her.

The prayer of the cross-petition is that the will of Thomas Morgan be construed to show that Nettie Morgan had no interest in said land or in the money derived from the sale thereof, that she be forever barred from asserting any right or claim against the defendants in the proceeds of sale of said farm, and that the petition be dismissed.

The following facts are established by the record:

Thomas Morgan died October 16, 1943, owning the real estate described in the petition.

Item II of the will of Thomas Morgan is as set out in the defendants' cross-petition.

Nettie Reese, named in item II of the will of Thomas Morgan, died September 18, 1949.

At the time of the death of Nettie Reese, the next of kin of Thomas Morgan were Jennie Reese, sister, Elizabeth Dackin, sister, Mary Jones, sister, Margaret Elliott, niece, Esther Ann Griffith, niece, Robert C. Griffith, nephew, John Griffith, nephew, Martha Pollex, niece, Morgan Griffith, nephew, and Mae Chapman, niece.

Edward Morgan, brother of Thomas Morgan, testator, died February 24, 1945.

The plaintiff, Nettie Morgan, is the widow and sole heir of Edward Morgan.

At the time of the execution of the contract of sale and the execution of the deed, the plaintiff was not a legal heir of Thomas Morgan under the laws of the state of Ohio, and therefore had no interest in said real estate.

At the time the contract and deed were executed it was believed by all parties that the plaintiff, Nettie Morgan, was the owner of a one-fifth interest in said real estate.

The money received from the sale of the premises was to be divided by the parties in five equal shares, one-fifth to the plaintiff, one-fifth to each of the three sisters, and one-fifth divided equally among the seven nephews and nieces.

It was also established by the evidence that, prior to the delivery of the deed to the purchasers, it was known by the defendants that plaintiff had no interest in said real estate, and that defendants did not intend to pay her a one-fifth share of the proceeds of sale.

The full purchase price was paid and partly distributed to the defendants, an amount equal to a one-fifth share thereof being retained on deposit awaiting the determination of the interest of Nettie Morgan therein.

By the terms of the contract of sale which plaintiff signed with certain of the defendants, the plaintiff bound herself, together with the other signers thereto, to sell the property in question for the sum of $28,000, and upon payment of the purchase price to deliver a warranty deed to the buyer, to furnish an abstract of title and to pay for the same, to pay the taxes and assessments on said land, including those due and payable in December 1949, to keep the premises insured in the amount of $11,200, to deliver possession of the premises by March 1, 1951; and the buyer was to have the landlord's share of the wheat planted.

The above recitals show ample consideration to support the alleged contract between the parties.

At the same time the contract was signed, the parties signed a warranty deed conveying the real estate to the buyer named in the contract of sale. In the deed the plaintiff, together with the defendants, covenanted that the grantors were

seized of an indefeasible estate in fee simple in the premises; that the premises were free from all encumbrancs whatsoever except taxes due and payable in June 1950; and that she would warrant and defend to the grantee, his heirs and assigns, the title to the premises against all lawful claims and demands whatsoever.

"A long series of decisions has established the rule that a benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract. Stated with greater elaboration, sufficient consideration may consist either in some right, interest, profit, or benefit accruing to the one party, or some forebearance, detriment, loss, or responsiblity given, suffered, or undertaken by the other. Any benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a sufficient consideration for the promise." 12 American Jurisprudence, 570, Contracts, Section 79.

To the claim of the plaintiff, the defendants assert that the alleged contract was based on a mutual mistake of all parties and, therefore, was null and void.

That there existed, at the time of the execution of the contract and the execution of the deed, a mutual mistake as to the interest of the plaintiff in the land is conclusively established by the record.

However, prior to the delivery of the deed to the purchasers and the payment by them of the purchase price, the defendants knew of this mistake and knew that the plaintiff was not the owner of a one-fifth interest in the land, as they had thought. The fact that plaintiff had no interest in the property conveyed was not known by the grantee in the deed at the time the contract and deed were executed and delivered.

The defendants could have rescinded their contract at the time they discovered their mistake, because of the existence of such mutual mistake and a new contract and deed could have been executed from which plaintiff's name could have been omitted. Thus, the defendants would have placed the plaintiff

in the position she occupied prior to her signing the contract and deed, and the defendants would have thereby been relieved of their contract with the plaintiff.

"The very idea of rescinding a contract implies that what has been parted with shall be restored on both sides. Releasing one party from his part of the agreement and excusing him from making the other party whole do not seem agreeable to reason or justice. Hence, the general rule is that a party who wishes to rescind an agreement must place the opposite party *in statu quo*." 12 American Jurisprudence, 1031, Contracts, Section 451.

While there existed a mutual mistake at the time of the execution of the contract and deed, no mutual mistake of fact or of law governing the subject matter existed at the time the deed was delivered and the purchase price paid.

"It is essential to the doctrine of equitable estoppel that the party sought to be estopped should have had knowledge of the facts, or at least that he should have had the means at hand of knowing all the facts or have been in such a position that he ought to have known them. This rule applies with particular force where the estoppel is claimed by reason of silence or inaction or of mere loose expressions of ambiguous character or where the case involves title to land or a dispute as to a boundary and there was no negligence in failing to assert his right." 19 American Jurisprudence, 648, Estoppel, Section 49.

"Equitable estoppel or estoppel in pais is a term applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. Any more exact or complete definition than this is difficult to formulate for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances." 19 American Jurisprudence, 634, Estoppel, Section 34.

With full knowledge of the true situation, the defendants chose to deliver the deed to the purchaser which the plaintiff had signed, and by so doing the defendants accepted the benefits of her deed, whatever they might be, and the plaintiff be-

came bound to the purchasers, and still remains bound to them, by the covenant set forth in the deed.

By delivering the deed the plaintiff executed, the defendants are now estopped from denying plaintiff's right to receive one-fifth of the proceeds of sale.

"The covenant of warranty is considered the principal covenant of a deed. In some states, in fact, it is the only express covenant of title employed in conveyances. The covenant of warranty is an agreement by the warrantor that upon the failure of the title which the deed purports to convey, either for the whole estate or part only, he will make compensation in money for the loss sustained. It is an assurance or guaranty of title. The obligation is not that the covenantor is the true owner or that he is seized in fee with the right to convey, but that he will defend and protect the covenantee against the rightful claims of all persons. This covenant, unless qualified by the contract, is a protection against defects of title, whether they result from mistakes of law or mistakes of fact." 14 American Jurisprudence, 521, Covenants, Section 51.

"The obligation of covenants of warranty can not depend on the knowledge, or want of knowledge of the parties to the covenants. If it could, covenants of warranty would be of little avail; for one of the leading inducements to the requirement of such covenants is, that they may serve as a safeguard against possible ignorance of his own title on the part of the vendor." *Lloyd* v. *Quimby,* 5 Ohio St., 262, 266; 11 Ohio Jurisprudence, 931, Covenants, Section 61.

The court finds error in that the judgment of the court below is contrary to law. The judgment is reversed and this court, rendering the judgment the Court of Common Pleas should have rendered, renders final judgment in favor of the plaintiff and against the defendants for the sum of $5,569, together with interest.

*Judgment reversed.*

QUATMAN, J., concurs.

YOUNGER, P. J., concurring in judgment. The plaintiff, in her petition, bases her case on the allegation that all the defend-

ants agreed with her that, if she would join in a contract to sell the real estate and join in the execution of a warranty deed, she would receive one-fifth of the purchase price thereof. The plaintiff failed to prove this allegation, even by her own testimony. The record shows that no such agreement was reached, but on the contrary, nothing whatever was said by any of the parties previous to the execution of the contract and deed to indicate any doubt as to plaintiff's ownership of a one-fifth interest. All parties assumed that plaintiff owned a one-fifth interest and acted accordingly.

Plaintiff's case now rests on the proposition that there was a valid consideration for her entering into the contract and deed.

Whether there was valid consideration, in my opinion, rests upon the answer to the question as to whether the grantee or purchaser has a valid cause of action against the plaintiff on her covenants and warranty should some defects subsequently appear. If she is liable, then there is "a detriment to the promisee."

The record does not show definitely whether the purchaser or grantee knew that plaintiff did not have title to the one-fifth at the time he accepted the deed. However, the record strongly indicates that he did have this knowledge. He applied for a $10,000 loan through Unverferth & Unverferth, attorneys, from The Mutual Life Insurance Company. It took some time to complete the loan, and the check for the loan, payable to Unverferth & Unverferth, Dwight Downing and Edna Downing, was endorsed over to Jennie Reese, agent for the Tom Morgan heirs, as part of the purchase price.

The record shows further that several of the defendants got their legal information that plaintiff had no title to a one-fifth share from Unverferth & Unverferth before the loan was closed and the deed delivered. But the record is strangely silent as to the actual knowledge of the grantee at the time he accepted the deed. If the record showed that the grantee had actual knowledge before acceptance of the deed that one of the grantors had no title, and that all parties had acted under a mutual mistake, then I would dissent, but since the record is as it is, I must concur.