NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0806n.06

No. 13-4345

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Oct 24, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| WILLARD C. LIGGETT; RUTH A. LIGGETT, Co-Trustees Under 10/10/05 Liggett Trusts, | ) ) ) ) | On Appeal from the United States District Court for the Northern District of Ohio |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | OPINION |
| CHESAPEAKE ENERGY CORPORATION, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| CHESAPEAKE EXPLORATION, LLC; CHK UTICA LLC, | ) ) ) | |
| Defendants-Appellees. | ) ) | |

BEFORE:   BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

**HOOD, District Judge**.   Appellants Willard C. Liggett and Ruth A. Liggett, Co-Trustees Under 10/10/05 Liggett Trusts (collectively, the "Liggett Trustees"), appeal the district court's November 5, 2013, findings of fact and conclusions of law and entry of judgment in favor of Appellees Chesapeake Exploration, LLC and CHK Utica, LLC (collectively, "Chesapeake"). The district court determined that the Oil and Gas Lease ("Lease") entered into by the individual Liggetts was valid and enforceable because the Liggetts warranted title and entered a covenant to

_____

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

defend the Lease.   On appeal, the Liggett Trustees argue that the district court erred:   (1) by presuming that the individual Liggetts had agency authority without an evidentiary basis; (2) by determining that the Liggett Trustees are bound by the Lease that the individual Liggetts signed because the Lease was made "wholly apart from and without regard for the family trusts"; (3) by ignoring that there was no "mutual assent or meeting of the minds," as the individual Liggetts genuinely believed that they owned the property at issue and were "individually leasing it . . . without regard for the family trusts"; (4) by failing to consider rescission as a remedy for what they deem was a mutual mistake of material fact in the formation of the Lease; (5) by wrongfully awarding damages; and (6) by wrongfully awarding attorney fees.   For the reasons stated below, we **AFFIRM** the district court's decision.

## I.

The individual Liggetts owned Blackacre, real property situated in Dennison, Tuscarawas County, Ohio.   [Opinion and Order, RE 77, Pg ID # 772]   In October 2005, the individual Liggetts conveyed the property to two (2) family trusts through a duly-executed, delivered, transferred, and recorded general warranty deed.   [Stip. of Undisputed Facts, Ex. 3, RE 71, Pg ID ## 716-61]   The Liggetts are co-trustees to this trust.   [RE 71, Pg ID # 772] The individual Liggetts claim to have misunderstood that the trusts would "take over" ownership of the property only after the Liggetts died.   [Aff. of Willard C. Liggett, RE 59, Pg ID ## 616-17] The Liggetts continued to believe that they individually owned the property until shortly before the filing of this lawsuit.   [*Id.*]

Case No. 13-4345
*Liggett et al. v. Chesapeake Corp. et al.*

On August 2, 2008, the individual Liggetts entered into a Lease with Patriot Energy Partners LLC ("Patriot Energy") in which the individual Liggetts gave Patriot Energy an oil and gas interest in the subject property. [RE 71, Pg ID ## 755-58]  Pursuant to the Lease, the individual Liggetts affirmed that they had title to the property, would defend that title, and would take reasonable actions that they deemed necessary to cure defects in the title.  Patriot Energy issued its lease payments to the Liggetts as individuals, not as trustees, and the Liggetts deposited all payments into their individual, joint bank account.

On August 31, 2010, two years after the original Lease was signed, the Liggetts individually ratified the Lease and amended it to permit lessee assignment. [RE 71, Pg ID # 759] Appellees Chesapeake Exploration, LLC and CHK Utica LLC (collectively, "Chesapeake") are the successor in interest to Patriot Energy and, therefore, acquired and currently hold the rights to the Lease and its Ratification and Amendment.   [Stip. of Undisputed Facts, RE 71, Pg ID #717]

The trust agreements gave the Liggetts certain "rights, powers, duties, and immunities to be exercised without court order or other authority upon such terms and conditions and at such times as the [Liggetts] determine[] in [their] absolute discretion[.]"  Specifically, the agreements stated:

> b.  Sales. To sell or exchange at public or private sale, lease, pledge, mortgage, donate, abandon or otherwise dispose of, deal with, or encumber (for any period of time, whether or not ending during the term of the Trust), any real or personal property comprising part of the trust estate.
>
> . . . .
>
> e.  Nominee. To register and hold trust property in the name of the Trustee, in bearer form, or in the name of a nominee of the

-3-

> Trustee, but the Trustee shall be liable for any wrongful act of any
> such nominee.

[RE 71, Williard C. Liggett Trust Agreement, Pg ID # 725; RE 71, Ruth A. Liggett Trust Agreement, Pg ID # 738]

The Lease provided that "[a]ll covenants and conditions between the parties hereto shall extend to their heirs, personal representatives, successors and assigns, and the Lessor hereby warrants and agrees to defend the title to the lands herein described."  [RE 71, Pg ID # 757]  The Lease further states that the "Lessor further agrees to sign such additional documents as may be reasonably requested by Lessee to perfect Lessee's title to the oil and gas leased herein and such other documents related to the sale of production of hydrocarbons as may be required by Lessee or others."  [RE 71, Pg ID # 757]

After they claimed that the individual Liggetts did not have the authority to enter into a lease agreement of the property, the Liggett Trustees brought an ejectment action in state court against Chesapeake Energy Corporation.  [Complaint, RE 1, Pg ID ## 10-29]  The Liggett Trustees claim that they filed the action after they realized they had "mistakenly and unsuccessfully attempted to lease" the property to Chesapeake Energy.  [Appellants Br. at 8] The action was removed to the district court based on diversity of citizenship, and Chesapeake Exploration and CHK Utica were substituted for Chesapeake Energy.

Chesapeake filed an Answer, Counterclaims, and a Third-Party Complaint, adding the Liggetts, in their individual capacities, as third-party defendants.  [Answer, Counterclaims, and Third-Party Complaint, RE 7, Pg ID ## 71-83]  Chesapeake claimed that the Liggetts, both in

their individual capacities and in their capacities as co-trustees, breached their warranty of title and accused the Liggetts of frivolous conduct in filing the suit seeking ejectment. Chesapeake sought a declaratory judgment from the district court "that the Lease [was] valid and that Chesapeake retain[ed] all rights therein described." [RE 7, Pg ID # 78] In response to the counterclaim, the Liggetts amended their Complaint to add their own "frivolous conduct" claim. [Amended Complaint, RE 11, Pg ID ## 132-35]

The matter proceeded in the district court. The parties then entered a joint stipulation of facts [Stip. of Undisputed Facts, RE 71, Pg ID ## 716-61], and each party moved the court for summary judgment. On October 11, 2013, the district court entered a Memorandum Opinion and Order [Opinion and Order, RE 77, Pg ID ## 771-85] that granted Chesapeake's summary-judgment motion, dismissed the claims by the Liggett Trustees, and determined that the Lease was "valid and enforceable, just as Mr. and Mrs. Liggett believed when and after they signed it until they filed this action." [*Id.*]

The district court held a bench trial on October 21, 2013, to address Chesapeake's remaining claims. At that time, Chesapeake withdrew its "frivolous conduct" claim. The district court found in favor of Chesapeake on its "breach of warranty of title" claim. On November 5, 2013, it awarded Chesapeake a joint-and-several judgment against the Liggetts, as trustees and individuals, and damages based on attorney's fees in the amount of $70,000. [Findings, RE 93, Pg ID ## 849-54; Judgment, RE 94, Pg ID ## 854-55] The Liggett Trustees filed a timely appeal.

## II.

## A.

This court reviews de novo a district court's grant of summary judgment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894 (6th Cir. 2004). Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A defendant bears the initial burden of showing the absence of a genuine dispute of material fact as to at least one essential element of a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The plaintiff must then present sufficient evidence from which a jury could reasonably find in plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must then consider whether, drawing all reasonable inferences in favor of the plaintiff, defendant must prevail as a matter of law. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

After a bench trial, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 683 (6th Cir. 2000). Where there are two ways to view the evidence, a district court's decision to view the evidence in one way as opposed to another cannot be considered clear error on review. *Anderson v. City of Bessemer,* 470 U.S. 564, 573-74 (1985). This Court reviews a district court's award or denial of attorney fees for abuse of discretion. *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 779 (6th Cir. 1996). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* at 780 (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989)) (internal quotation marks omitted).

**B.**

The Liggett Trustees argue on appeal that the district court erred in finding that the individual Liggetts acted within the scope of their authority for an "undisclosed principal," presumably the trusts. The Liggett Trustees claim that just because one has the authority and power to act as an agent does not necessarily mean that one does so on a given occasion. The Liggett Trustees assert that the district court presumed an agency relationship between the trusts and the individual Liggetts without any evidentiary basis and that the burden to show an agency relationship is on the appellees. The Liggett Trustees also argue that a principal is not bound by the acts of his agent where the agent is acting on the agent's behalf.

Chesapeake argues that the district court correctly held that the individual Liggetts executed the Lease as agents for the Liggett Trustees for an undisclosed principal, *i.e.*, the trusts. Chesapeake claims that both the principal and the agent are liable under the Lease and are bound to the terms in the Lease.

"A party who claims that a principal is responsible for the acts of an employee is obligated to prove the agency and scope of his authority." *Brown v. Christopher Inn Co.,* 344 N.E.2d 140, 143 (Ohio Ct. App. 1975). The common-law rule providing that notice to the agent is notice to the principal is well settled in Ohio. *Finkle v. W. & S. Life Ins. Co.,* 172 N.E.2d 311, 321 (Ohio Ct. App. 1960). A principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority. *State ex rel. Nicodemus v. Indust. Comm'n*, 448 N.E.2d 1360, 1362 (Ohio 1983). The exception to this rule arises "when the agent is engaged in committing an

independent fraudulent act on his own account, and the facts sought to be imputed relate to this fraudulent act." *Am. Export & Inland Coal Corp. v. Matthew Addy Co.,* 147 N.E. 89, 92 (Ohio 1925) (quoting *Allen v. S. Boston R.R. Co.*, 22 N.E. 917, 919 (Mass. 1889). "[I]t cannot be presumed that an agent will communicate to his principal acts of fraud which he has committed on his own account in transacting the business of his principal." *Id.* (quoting *Allen*, 22 N.E. at 919). "[T]he true reason for the exception is that an independent fraud committed by an agent on his own account is beyond the scope of his employment, and therefore knowledge of it, as a matter of law, cannot be imputed to the principal, and the principal cannot be held responsible for it." *Id.* at 93 (quoting *Allen*, 22 N.E. at 919).

The district court concluded that the individual Liggetts executed the Lease as agents for the Liggett Trustees, which rendered both the undisclosed principal, the trusts, and the agents, the individual Liggetts, jointly and severally liable to the Lease. [Findings, DE 93, Page ID # 851] The district court incorporated its findings from its prior Memorandum Opinion and Order granting summary judgment in Chesapeake's favor. [Findings, DE 93, Pg ID ## 849, 851] In its summary-judgment opinion, the district court had found that, after the individual Liggetts signed the Lease, the trusts held the property and the mineral rights. [Opinion and Order, DE 77, Pg ID # 783] As such, the district court found that the individual Liggetts were "necessarily acting as agents" of the trusts. [*Id.*] The district court noted that the trusts gave the trustees the authority and power to hold and dispose of property of the trusts. [*Id.*]

The district court did not err in presuming that the individual Liggetts were agents of the Liggett Trustees and the undisclosed principal, the trusts. There has been no allegation by the

principal in this case, the trusts, or the Liggett Trustees that the individual Liggetts committed some type of fraud when they executed the Lease that would fall within an exception to the common-law rule that holds a principal to an agent's action and knowledge. It is nonsensical to conclude that the individual Liggetts cannot be the agents of the Liggett Trustees, who are in fact identified in the trust instruments as the individual Liggetts. The individual Liggetts' claim that they did not know or were mistaken that they did not individually own the property cannot be a basis to void the Lease at issue. The motivation by the Liggett Trustees is evidenced in their reply brief where they rhetorically state, "what trustee would trade pennies for his beneficiaries' dollars?" [Reply at 8] The issue in this case does not involve whether the trustees breached their fiduciary duties, but whether the signatures of the Liggetts as individuals bound the trusts to the Lease.

The Liggett Trustees argue that the court must determine the "scope" of what the agent is employed to do, citing *Damon's Missouri, Inc. v. Davis,* 590 N.E.2d 254, 257-58 (Ohio 1992). The *Davis* case is distinguishable in that the agent's "scope" of authority was at issue because the court had to determine whether the agent was acting as an insurance "broker" or an insurance "agent" representing a specific insurance company. *Id.* at 258-60. Here, there is no issue as to the "scope" of the individual Liggetts' authority because the Liggett Trustees had the authority to hold and sell property of the trusts. Acting as agents for the trusts, the scope of the individual Liggetts' authority included entering into the Lease.

The Liggett Trustees note in their reply brief that the trusts' ownership was a matter of public record when the Lease was signed, charging the lessees and others with the public-record

knowledge, yet the individual Liggetts do not charge themselves with the same public-record knowledge, even when the individual Liggetts themselves created and executed the trusts. [Reply at 9] The Ohio Supreme Court reasoned in *Citizens' Savings Bank v. Blakesley*: "If these trustees succeeded in keeping themselves profoundly ignorant . . . of what was transpiring . . ., it certainly was not the fault of [the defendant], and we know of no rule of law or fair dealing that calls upon us to visit [the trustees'] neglect upon" an unknowing defendant. 42 Ohio St. 645, 653 (Ohio 1885). "Those who create the trust, appoint the trustee, and clothe him with the power that enables him to mislead, ought, if there is misleading, to suffer rather than an innocent party." *Id*. at 652. The *Blakesley* court imputed knowledge of officers to trustees because only the officers were competent to act for and bind the principal. *Id.* at 653. In this case, the individual Liggetts created the trusts, and they are the individuals who can act for the Liggett Trustees. The district court did not err in concluding that the individual Liggetts were agents of the Liggett Trustees and the trusts and that the individual Liggetts' actions bound the trusts.

## C.

The Liggett Trustees argue that the district court ignored the fact that the individual Liggetts genuinely believed that they owned the property and were individually leasing it without regard for the family trusts. The Liggett Trustees claim that the district court blurred the lines between cognizable legal entities and capacities, citing *Cartwright v. Allen*, No. CA2011-10-025, 2012 WL 3264268 (Ohio Ct. App. Aug. 13, 2012), and *Robert's Auto Center, Inc. v. Helmick*, No. 21073, 2003 WL 294354 (Ohio Ct. App. Feb. 12, 2003). The Liggett Trustees assert that these cases stand for the proposition that lack of mutual assent—or meeting of the minds—voids the

Case No. 13-4345
*Liggett et al. v. Chesapeake Corp. et al.*

Lease and therefore requires reformation or rescission of it.

Chesapeake argues that, because the principals and agents in this case are the same people, it would be illogical for us to hold that the Liggetts had a meeting of the minds while wearing their individual hats but not while wearing their trustee hats. Chesapeake also argues that the mutual-intent arguments in Issues Three and Four are "newly coined arguments" not raised below.

We generally do not review arguments raised for the first time on appeal. *United States v. Henry,* 429 F.3d 603, 618 (6th Cir. 2005). The district court, however, addressed the Liggett Trustees' argument of mutual mistake in its summary judgment ruling, and found that the Liggett Trustees had superior knowledge of the ownership of the property that they had warranted. [Pg ID ## 782-83]

The *Cartwright* case cited by the Liggett Trustees is distinguishable because the issue there was whether a quitclaim deed could convey property where the grantor signed the deed in his capacity as a trustee and where the grantor had revoked the trust and the trust was never funded. *Cartwright*, 2012 WL 3264268 at *1. As the court noted, it is well-settled law that a "quitclaim deed conveys to the grantee whatever the interest the grantor has in the property." *Id.* at *2 (quoting *Whitt v. Whitt*, No. 02-CA-93, 2003 WL 21384590, at *4 (Ohio Ct. App. June 13, 2003)). The court found that, because the grantor lacked an interest in the property to convey as a trustee, the attempted transfer by way of a quitclaim deed was ineffective and conveyed nothing to the appellants. *Id.* Here a quitclaim deed was not at issue; the issue is, rather, whether an agent bound a principal under the terms of a contract. The court in *Cartwright* did not ignore the status of the grantor as trustee because a quitclaim deed is a type of deed that conveys only the interest of

the grantor in the property. As discussed above, the same cannot be said of whether an agent can bind a principal under a contract.

The *Cartwright* case also addressed the issue of mistake, and the court's discussion of that issue actually supports a finding that no mistake occurred in this case. "A person seeking reformation of a written instrument must prove by clear and convincing evidence that the mistake regarding the instrument was mutual." *Id.* at *5. The court held that the appellants failed to establish that the parties were mutually mistaken as to the capacity in which the grantor owned the property. *Id.* Because the appellants who were seeking reformation had knowledge that the grantor owned the property as an individual, rather than a trustee, the *Cartwright* court characterized appellants' claim that they were mistaken as to the grantor's ownership of the property as "disingenuous." *Id.* In this case, the individual Liggetts certainly had knowledge that the trusts owned the property; they created the trusts at issue. The Liggetts cannot succeed on a claim of mutual mistake; as in *Cartwright*, their argument that they mistakenly believed that they owned the property individually is "disingenuous."

In *Robert's Auto*, the Court of Appeals of Ohio held that the trial court did not abuse its discretion in finding that the lease agreement at issue was void where the appellee who signed the lease assignment entered into the lease acting as an agent of her husband, but the appellee actually was a co-owner of the property. 2003 WL 294354, at *3. The court held that "[s]ince both parties agree they were under the mistaken belief that [the husband] was the sole owner of the property," the lease failed due to a lack of "meeting of the minds" as to ownership because the appellee signed the lease as an agent of the husband. *Id.* at n.1. "[A] mutual mistake of fact calls

-12-

into question the very existence of the contract." *Id.* (alteration in original) (quoting *Reitz v. West*, No. 19865, 2000 WL 1226617, at \*6 (Ohio Ct. App. Aug. 30, 2000)) (internal quotation marks omitted). In this case, as discussed above, there is no mutual mistake because the individual Liggetts created the trusts and conveyed the property to the trusts. Because there is no mutual mistake in this case, rescission of the Lease is not required.

**D.**

The Liggett Trustees argue that the district court erred in ruling that they breached the warranty-of-title provision under the Lease because Chesapeake was not dispossessed of the property by operation of a superior or paramount title. Because Chesapeake enjoys possession through a valid and enforceable Lease, the Liggetts argue that there cannot be a breach of warranty of title. The Liggett Trustees further argue that the district court erred in awarding attorney fees because the Lease provides for an award of attorney fees only where indemnification is required.

Chesapeake responds that the district court did not err in finding both that the Liggetts breached their warranty of title and also that they refused to fulfill their obligation to defend the title when they commenced and prosecuted the instant action. Chesapeake argues that the district court did not err in awarding attorney fees because attorney fees are a proper measure of damages for breach of warranty of title.

The district court concluded that the "Liggetts' breach of their title warranty and refusal to fulfill their obligation to defend that title, including commencing and prosecuting this action challenging the title they warranted, constitute breaches of the title warranty made as part of the transfer." [Findings, DE 93, Pg ID # 852] Courts enforce title warranties and covenants to

defend that title.   *Fassnacht v. Bessigner*, 172 N.E. 636, 637 (Ohio Ct. App. 1930) ("The deed is explicit in its terms, and, unless the facts are such as in law would justify a reformation thereof, the grantors must answer in damages for the injury, if any, resulting to the grantee for the breach of its covenants.").   The covenant of warranty obligates the grantor to defend and protect the grantee against rightful claims of others and against defects of title, "whether [the defects] result from mistakes of law or mistakes of fact."   *Morgan v. Reese*, 134 N.E.2d 581, 585 (Ohio Ct. App. 1954) (quoting 14 Am. Jur. 521, Covenants, § 51 (1936)) (internal quotation marks omitted).

There is no dispute that the individual Liggetts agreed in ¶ 17 of the Lease that "the Lessor hereby warrants and agrees to defend the title to the lands herein described."   [Lease, Pg ID # 757] In ¶ 18, the individual Liggetts also agreed "to sign such additional documents as may be reasonably requested by Lessee to perfect Lessee's title to the oil and gas leased herein and other documents related to the sale of production of hydrocarbons as may be required by Lessee or others."   [Lease, DE 71, Pg ID # 757]   The district court did not err when it found that the Liggett Trustees breached the warranty provision when they failed to defend the title that the individual Liggetts warranted under the Lease.   The Liggett Trustees' action to eject Chesapeake, arguing that the Lease is invalid, is a breach of the individual Liggetts' agreement in the Lease to defend the title to the lands.   As discussed above, the individual Liggetts' promises made under the Lease bind the Liggett Trustees and the trusts.

The Liggett Trustees argue that breach of the warranty of title only occurs when the lessee is dispossessed by one of superior title, citing *Wetzell v. Richcreek,* 40 N.E. 1004 (Ohio 1895). This argument is misplaced in that *Wetzell* also ruled that there exists a claim for constructive

breach that does not require dispossession from the property. *Id.* at 1006 ("Such eviction, however, may be constructive, as well as actual[.]"). In this case, not only did the individual Liggetts warrant title, but they also agreed to defend title. Filing a lawsuit to eject Chesapeake and failing to defend the Lease at issue are actions contrary to the express provision of the Lease. The district court did not err when it found that the Liggett Trustees breached the provisions of the Lease, warranting that they had title and would defend that title.

The district court's award of attorney fees as an element of damages for the breach of the Lease was not an abuse of discretion. *See Carrier v. DeWalt*, No. 3-87-32, 1989 WL 36608, at *2 (Ohio Ct. App. April 18, 1989) (reasoning that "recovery of attorney fees in situations where a grantee is compelled to defend his grantor's title" is appropriate when "recovery [is] based on a breach of warranty of title and the grantor's covenant to defend the title against the claims of others"). "But for" the breach of warranty and failure to defend the title by the Liggett Trustees and/or individual Liggetts, attorney fees incurred in defending the suit would not have been necessary. *Kovack v. Ohio Bar Title Ins. Co.*, No. 2300-M, 1994 WL 721931, at *7 (Ohio Ct. App. Dec. 30, 1994); *McGovern v. Landmark Title Agency,* No. 10765, 1988 WL 134884, at *5 (Ohio Ct. App. Dec. 12, 1988). We accordingly hold that the district court's award of the $70,000 stipulated as damages by the parties was not an abuse of discretion.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.